In the Matter of Proving the Last Will and Testament of
JOHN H. ENGLEBIRT, Sometimes Written ENGELBIRT,
ENGELBERT or ENGELBERG, Deceased, as a Will of Real
and Personal Property.

LOUIS R. WARREN, Petitioner, Appellant; FREDERICK ENGEL-
BERT and MARGARET BENNE, Respondents.

Second Department, July 31, 1918.

**Decedent's estate — death — survivorship — evidence.**

A husband and his wife, the former in a weak physical condition, were both
found dead in a room as the result of inhaling gas. Evidence examined,
and *held*, insufficient to establish survivorship of the wife, to whom the
husband had willed his property, and that his estate passed to his father
as sole heir and next of kin.

APPEAL by Louis R. Warren, petitioner, from a decree of
the Surrogate's Court of the county of Queens, entered in the
office of said Surrogate's Court on the 4th day of March,
1918, denying the petitioner's application for letters of adminis-
tration c. t. a. upon the estate of John H. Englebirt, deceased.

*Edwin Kempton, Jr.,* for the appellant.

*Lewis F. Glaser,* for the respondents.

THOMAS, J.:

From a main in the street, gas came into the bedroom of
Englebirt and his wife, who, after retiring on the night of
March twenty-second, were found dead about four P. M.
of March twenty-third. The husband had willed his property
to his wife, and the question is whether she survived to take it.
The surrogate found that both died at the same time as the
result of a common casualty, and that the testator's property
devolved on his father as sole heir and next of kin. The
appellant, in behalf of the estate of the wife, contends that
there are facts probative of her surviving her husband. His
counsel in an interesting presentation, while admitting the
general rule that there is no " presumption of survivorship
simply from age, sex or even relative strength," contends that
the order of death in the present instance depended on the
relative powers of the man and woman to resist the destruc-

App. Div.]                Second Department, July, 1918.

tive tendency of the gas, and that the facts in that regard show enfeeblement in the husband, and strong resisting elements in the wife, and that their condition when found aids the inference of the survival of the one best fitted in constitution to meet the invading and destructive energy. The appellant's argument is that the husband was an invalid of nearly exhausted vitality, while the wife was in such sound health that the usual expectancy of life was indicated. The matter requires consideration. It appears that the red corpuscles of the blood and their attendant element, hemoglobin, attract and carry oxygen to the lungs, but that when the carbon monoxide of illuminating gas is present, they take that and reject the oxygen, with resulting asphyxiation. Then the argument continues that, as the red corpuscles were greatly reduced by the husband's disease, there were less of them to carry the oxygen than in the wife, who was in robust health, and that suffocation would come first to the husband. Although Dr. Hart so testified, the conclusion to the lay mind seems a *non sequitur*. If there are less conveying red corpuscles in a diseased than in a sound body, they are less to carry either oxygen or monoxide. In that case the greater number in the sound body would carry the greater amount of poisonous gas. There is, however, another view of the subject. Where the corpuscles supply poisonous gas, the heart by increased action would make compensation, and the person (in this case the husband) with the feebler heart would be at a disadvantage in the continuance of life, and to that both experts seem to agree. There are, then, under consideration a man with cancer of the stomach for which operation in 1912 was deemed improvident, with the consequent lowered power of resisting poisonous gas, and a woman of sound body abler to resist it, and appellant asks decision that the woman was enabled to survive the man and did so. But is not that inconsistent with the rule that there is no presumption of survivorship from relative strength? The appellant urges that the rule does not apply where the parties are subjected equally to the same destructive energy, unlike the case of common casualty by fire or drowning, where it might not be known in what order the fire reached the persons or they were exposed to drowning. I infer that the proposition is that,

Second Department, July, 1918.          [Vol. 184.

if in the present case fire had reached or water had submerged the persons situated as they were, the conclusion would be that the well person survived the diseased person. But that would involve the inquiry whether there was a community of exposure. In the present case the husband was found in his underwear on a lounge, with one foot on the floor, one foot was " nearly in the pants," while the wife was lying in bed covered. The man's body was cold and stiff, and her body was not cold nor stiff. There was a pillow and horse blankets with the lounge. The situation suggests that the parties did not receive the gas in the same situation. Whether the husband was more exposed on the lounge permits discussion, but it is indicated that he exhibited evidences of life and consciousness of danger and effort to escape that are absent in the case of the wife. Whether such phenomena suggest that the husband tried to dress before his wife died is speculative, and yet an act of the living on his part is found while none appear that concern the wife. So it may be argued that the gas did not act upon them while they were in a state of equal passivity, for one succumbed without, and the other with, a struggle to resist and to escape. The indication may be of slight value, but that is true of all data pertaining to the event. It touches too closely the realm of speculation to permit any certainty in decision. It is said that the wife's body was warm and pliable, and the husband's was not, a condition consistent with her flesh and covering, and his exposure and anæmic condition. Dr. Hart felt competent to state that the husband was first to die, while Dr. Noble asserted that the ascertainment was beyond anybody's knowledge. The surrogate was unable to determine whether there was a priority of death, and I cannot find stable evidence on which to base a conviction. The event furnishes opportunity for subtle debate, but not stable facts on which may rest rights of property.

The decree of the Surrogate's Court of Queens county should be affirmed, with costs payable out of the estate.

JENKS, P. J., MILLS, KELLY and JAYCOX, JJ., concurred.

Decree of the Surrogate's Court of Queens county affirmed, with costs payable out of the estate.