No. 16,299.

SAUERS, ADMINISTRATRIX *v.* STOLZ.
(218 P. [2d] 741)

Decided March 20, 1950.   Rehearing denied May 8, 1950.

Mr. RICHARD H. SIMON, Mr. EDWARD H. SHERMAN, for plaintiff in error.

Mr. J. P. FOARD, Mr. IRL FOARD, Mr. ROY W. FOARD, for defendant in error.

MR. JUSTICE HAYS delivered the opinion of the court.

W. E. DOYLE and Mary Edna Doyle, his wife, were killed in a collision between an automobile, in which they were the sole occupants, and a truck, September 12, 1948. Both were rendered unconscious at the time of the impact and never regained consciousness. The truck driver was not called as a witness. At the time of her death, Mary was seized and possessed of certain real estate in El Paso county. She died intestate. A dispute arose concerning her heirs, and the devolution of said property, which in turn depended upon the priority of the deaths. The sole question presented to the trial court for determination was whether or not the husband predeceased the wife. The trial court found, inter alia:

"The court finds from all the evidence that both Mr. Doyle and his wife came to their death by reason of the collision above described, and that death resulted from skull fracture and internal injuries in both cases.

"The court further finds that there was not sufficient evidence submitted as to survivorship for the court to determine that W. E. Doyle, the husband, survived Edna M. Doyle, the wife, and further finds that there is no sufficient evidence that said persons, Edna M. Doyle and W. E. Doyle, died otherwise than simultaneously."

The court, in making the above findings, apparently relied upon chapter 197, S.L. '43, known as the uniform simultaneous death act, which provides in part as follows: "Section 1. Where the title to property or the devolution thereof depends upon priority of death and there is no sufficient evidence that the persons have died otherwise than simultaneously, the property of each person shall be disposed of as if he had survived, except as provided otherwise in this act."

■ Where two or more persons perish in a common disaster, such as here, and there is no proof as to which died first, the statute furnishes a guide, in the absence of evidence, by which descent of property may be judicially determined, and creates a presumption that death of the parties was simultaneous. The statute is inapplicable if there is evidence as to which one of the parties survived the other or if there are particular circumstances from which the fact of survivorship may be inferred. The presumption of simultaneous death of the parties was not intended to take the place of competent, positive and direct evidence, and the fact of survivorship requires no higher degree of proof than any other fact in the case. 16 Am. Jur. 32, §39, et seq; 25 C.J.S., p. 1071, §12.

Two lay witnesses, Frank W. Hathaway and Shirley C. Williamson, examined the Doyles at the time of the accident. Hathaway testified that he was a garage mechanic and was working approximately one block from where the accident occurred; that he immediately rushed to the scene, and arrived there within two minutes after he heard the crash; that upon his arrival, the following occurred, as he testified: "Q. And when you arrived at the scene of the accident what did you find? A. I went to Mrs. Doyle. She was laying on the right hand side of the car. She was completely out of the car. I tested her to see if she was alive by pressing under the arm, under the breast and around the arm to see if I could find a heart beat, and I did not find any heart beat. * * * Q. Where, under her arm, did you press to determine if there was a heart beat? A. Under the left arm and around by the breast and a little over towards the middle of the chest. Q. And, from any of your examination, did you determine there was a heart beat of any kind? A. No, sir. Q. Did you observe the condition of the body at that time? A. The body was twisted. It looked like to me it might have been twisted

in the hips pretty near clear around. Q. What do you mean by twisted? A. She was laying normal in the chest, flat on her back, and at her hips, they were kind of turned around. Q. About how far? A. I would say about a three-quarter turn. Q. Was there any movement on or about the body at all? A. No. * * * Q. After examining Mrs. Doyle's body what did you, next do? A. I went around the car to see if there was any other person in the car and then I found a man on the left side of the car, which was laying with his head over the wheel. I tested him for heart beat and I found a slight heart beat on him. Q. Was the man's head on the inside or outside of the car? A. It was outside. Q. How did you test the man? A. Under the left arm I found a slight heart beat. Q. And was there any movement of his body? A. I didn't see no movements of his body—only heart beat that I felt."

The other eyewitness, Mr. Williamsen, testified that he was driving to Colorado Springs immediately following the truck which collided with the Doyle car, and was at the scene of the accident within a few minutes after it occurred. A portion of his testimony is as follows: "Q. Will you describe her [Mrs. Doyle's] condition as you saw her at that time? A. Well, she was laying out of the car with her feet still on the running board and she had just fell out of the car, evidently, to the left side and her body was twisted—looked like it was twisted almost in half. A broken back was what I thought it was; upper half of the body was face up and lower half down. Q. Did you examine her? A. I tried to feel a pulse on her arm and there was none; and under the arm and there was none. She had dust both in her nostrils and in her mouth and she hadn't taken a breath from the time of the accident—couldn't possibly have. * * * Q. Did you make any further examination of the body of Mrs. Doyle at that time? A. No [the rest of the answer stricken]. * * * Q. Then what did

you do? A. Walked around to the other side of the car. Q. What did you find? A. Mr. Doyle was hanging out the left side of the car. Q. Describe the position of his body. A. His feet was caught between the motor and front seat; his head was twisted back in under the front part of the car; his entire body was hanging out of the car and head twisted back under the running board. It had been dragged. Q. Did you examine his body? A. Yes. I pulled his body around straight and he was bleeding quite badly. Q. How did you examine it? A. He had pulse on his arm, to start with. Q. Would you say that was a strong pulse? A. Yes, it was. Q. Or a weak pulse? A. It was strong. * * * Q. What else did you do at the automobile at that time? A. Well, he slowly bled to death. He was bleeding quite profusely and certain that is what he died of. He had a very bad split head and that is what he died from."

On cross-examination Williamsen further testified concerning Mr. Doyle: "Q. His head was under the board? A. Under the running board. Q. What was the condition of his head? Mr. Doyle's head? A. It was cracked clear open, sir. Q. The head was cracked open? A. Yes, sir. It was bleeding. Q. Complete skull fracture, would you say? A. Yes. Q. And bleeding profusely? A. Yes. You could see his heart beat. Every time—it would spurt through the top of his head every time the heart beat. Q. Was his head split wide open? Could you see into his brain? A. Pretty near see into it—quite bloody. Q. Was he conscious? A. No, sir."

Williamsen testified on recross-examination that the other eyewitness, Mr. Hathaway, "knelt down by the body and felt for pulse and we discussed at the time that his pulse was fading fast."

Dr. Harlan T. Close testified that the spurting of blood from the head, in the manner described by the two eye-witnesses, indicated heart beats.

The above statements were uncontradicted and no at-

tempt was made to impeach the witnesses who made them. The trial judge, in his findings, said that he believed the witnesses gave their honest conception of the facts as they observed them.

There being direct evidence that Mr. Doyle survived his wife, there was no occasion for the trial court's resorting to the statutory presumption that Mr. and Mrs. Doyle died simultaneously.

Accordingly, the judgment is reversed.