THE COURT.
 

 The court feels constrained by the unusual facts of this case and the questions of law involved to state its reasons for reversing the judgment and remanding the case for a new trial.
 

 The cause was tried by the court without a jury and the evidence was not reported. The record on appeal includes
 
 (■inter alia)
 
 an engrossed statement of the evidence, findings of fact, conclusions of law, and judgment. Plaintiff appealed upon the customary grounds, but has presented only two:
 

 First—Insufficiency of the evidence to justify the decision and
 
 judgment;
 

 Second—That the judgment is against law.
 

 In considering the first ground, the trial court’s engrossed statement of the evidence will be set forth verbatim. A short preliminary statement of some details shown by the exhibits but not included in the statement is necessary for its clarification.
 

 It appeared that one Gussie Mathews and her nephew, Anthony Mathews, resided together and had taken into their home a minor child, Sylvia McKinney, the daughter of Doris
 
 *896
 
 Kelly. All three are now dead, as will appear from the statement of the evidence. On September 4, 1945, the Benevolent Society of California issued its policy of insurance on the life of Sylvia McKinney, then four years old, in the sum of $1,000, with “Anthony Mathews, Godfather” as named beneficiary, and he paid the required premiums thereon to the date of Sylvia’s death. The contest is essentially between the Administrator of Anthony Mathews’ estate and Doris Kelly, Sylvia’s mother, each claiming the benefits under the policy.
 

 Both parties conceded that if Sylvia McKinney predeceased the named beneficiary, Anthony Mathews, his administratrix, the plaintiff, is entitled to the, benefits; but that if Anthony predeceased Sylvia in fact, or if the evidence indicates simultaneous death of the insured and the beneficiary within the provisions of section 296.3 of the Probate Code, the parents, heirs, or personal representative of Sylvia McKinney would be entitled thereto. Defendant Doris Kelly claims to be Sylvia’s sole heir.
 

 The trial court’s engrossed statement of the evidence is as follows:
 

 “The following is a narrative statement of the oral proceedings on the trial of the above-entitled action:
 

 “It was stipulated that Sylvia M. McKinney is dead; and that Anthony Mathews is dead; and that Marianna Azvedo is Administratrix of the estate of said Anthony Mathews, deceased (having succeeded one Mathias as special administrator) ; that the premiums on the insurance policy involved were paid by Anthony Mathews during his lifetime; that Doris Kelly, also known as Mrs. T. M. Kelly, is'natural mother of Sylvia M. McKinney, deceased. That Sylvia M. McKinney and Sylvia McKinney Mathews are one and the same. That said policy of life insurance is in effect.
 

 “Al Hedin was called as a witness and testified that he is, and has been for some years, Captain in the Turlock Police Department; that on Sunday, March 23, 1952, he was asked to go to the home of Anthony Mathews in Turlock, California, and make an investigation. When he entered the house, he stated he found the bodies of three persons later identified as Anthony Mathews, Sylvia M. McKinney, and a woman called Gussie Mathews. He described and diagrammed the house and stated that he found' the girl, Sylvia M. McKinney, dead in bed in the back bedroom. She was dressed in her
 
 *897
 
 night clothes. The bed covers were partially thrown off her body. One bullet had penetrated her head.
 

 “Anthony Mathews was lying fully clothed with his head in the open doorway of the adjoining bedroom. He was lying face down; his forehead had been bruised; there was one shot which had penetrated his chest in the shoulder region and from his back.
 

 “The party known as Gussie Mathews was lying fully clothed in the center bedroom with a revolver in her hand. The four or five shots had been made from this revolver. There was another pistol on the dresser in this room from which one shot had been fired.
 

 “Several bullet marks were found in the living room in which Anthony Mathews’ body lay.
 

 “A1 Hedin was asked for his opinion as to whether Anthony Mathews or Sylvia M. McKinney had died first. The counsel for Doris Kelly objected to an expression of his opinion and the objection was sustained by the Court.
 

 “E. K. Elliott was called as a witness also by Plaintiff and testified that he had been a police officer for the City of Turlock for many years; that he also appeared at the Anthony Mathews house on Sunday, March 23, 1952, and gave the same evidence as given by officer A1 Hedin.
 

 “Harry Hilliard was called as a witness by plaintiff and testified that he was at the Mathews premises on Friday, March 21, 1952, and talked with Gussie Mathews; that she appeared very nervous and did not permit him in the house. Harry Hilliard was an employee of the City of Turlock, and was making a water survey at the time.
 

 “Dr. J. K. Ransom, County Coroner and physician and surgeon, was called as a witness by plaintiff and testified to the same physical arrangements as testified by officers A1 Hedin and E. K. Elliott. He also stated that the death of Sylvia M. McKinney was caused by one shot and the nature of the wound was such as to cause instant death; that Anthony Mathews had apparently been stunned by a blow on the forehead, possibly from a bullet, and that the cause of death was the shot in the chest region which had entered from his back in the shoulder area, but this type of wound did not cause death instantaneously; that there was evidence of a struggle in the living room and evidence that other shots had been fired which did not find their mark in Anthony Mathews; that, in his opinion, Sylvia M. McKinney died before Anthony
 
 *898
 
 Mathews did, otherwise there would be too many things to explain away, such as the instantaneous death of the girl, Sylvia M. McKinney, her peaceful position in bed, the several shots and apparent struggle between Gussie Mathews and Anthony Mathews in the living room. When asked by the court if he could tell which one died first, he stated that he could not. He also stated that if anyone said that Anthony Mathews died first, there were to many arguments to explain away.
 

 “Through this witness, the respondent offered in evidence the following documents: The coroner’s verdict concerning Sylvia M. McKinney (respondent and cross-complainant’s Exhibit A), and the death certificate for Sylvia M. McKinney marked Exhibit C, both documents showing that Sylvia M. McKinney probably died on March 20, 1952, or March 21, 1952; the coroner’s verdict concerning Anthony Mathews, marked cross-complainant’s Exhibit B, and the death certificate for Anthony Mathews marked as cross-complainant’s Exhibit D, both documents showing that Anthony Mathews probably died March 20, 1952, or March 21, 1952.”
 

 Upon that evidence the trial court found specifically and as a matter of fact that Anthony Mathews (the beneficiary) predeceased Sylvia McKinney (the insured), and therefore entered judgment against the administratrix of Anthony Mathews’ estate and in favor of Doris Kelly, as mother and sole heir at law of Sylvia McKinney.
 

 We will consider first the sufficiency of the evidence to support that finding as one of fact. The evidence does not indicate that anyone other than the three deceased persons had any part in this tragedy. There is no evidence from which it can even be inferred that Sylvia killed herself or either of the others. There is no evidence that Anthony killed Sylvia, but if he did he must have survived her. Therefore any attempt to support the finding must begin with the assumption that Gussie killed Sylvia. There is no evidence to support any inference that Anthony met his death otherwise than at the hands of Gussie. And assuming as we must to support the finding, that Gussie killed Sylvia, the evidence indicates a sequence of events and an appreciable interval between the deaths of Sylvia and Anthony. But after diligent search we are unable to find even a scintilla of evidence that Sylvia was still living when Anthony was killed. As the coroner stated, every reasonable inference appears to be to the contrary. There being no evidence whatever to support
 
 *899
 
 the trial court’s finding, it cannot be sustained by the rule applicable to findings on conflicting evidence, for there is no conflict.
 

 But the respondent contends that the judgment should be affirmed because the facts bring the case within the purview of section 296.3 of the Probate Code, which is a part of the Uniform Simultaneous Death Act, and reads as follows;
 

 “Sec. 296.3. Insured and beneficiary.
 
 Where the insured and the beneficiary in a policy of life or accident insurance have died and there is no sufficient evidence that they have died otherwise than simultaneously the proceeds of the policy shall be distributed as if the insured had survived the beneficiary.”
 

 When both the insured and the beneficiary are dead, that section prescribes with precise particularity the condition upon which the policy proceeds will be distributed as if the beneficiary had predeceased the insured, and the condition is that
 
 “there is no sufficient evidence that they have died otherwise than simultaneously.”
 
 That this condition must be met precisely, has been frequently declared. In
 
 Thomas
 
 v.
 
 Anderson,
 
 96 Cal.App.2d 371 [215 P.2d 478], after reviewing the evidence, the court declared; “We conclude that there was sufficient evidence to support the court’s finding that there was an interval of time between the deaths of Mr. Thomas and Mr. Sturgeon and that they did not die ‘ simultaneously ’ within the meaning of section 296.2 of the Probate Code.” (§§ 296.2 and 296.3 are analogous.) In that case the interval was extremely short, but the court expressly overruled the claim that the condition would be met if the deaths occurred at
 
 “approximately the same time.” In Di Bella’s Estate
 
 (1950), 100 N.Y.S.2d 763, affirmed 107 N.Y.S.2d 929, it was held that an interval of one second between the deaths would render the section inoperative. In
 
 Sauers
 
 v.
 
 Stolz
 
 (1950), 121 Colo. 456 [218 P.2d 741], the trial court attempted to apply the simultaneous death statute by making a specific finding “that there is no sufficient evidence that said persons, Edna M. Doyle and W. E. Doyle died other than simultaneously.” But the reviewing court found evidence in the record indicating that although both died from the same calamity, Mr. Doyle’s pulse was discernible for a moment or two after Mrs. Doyle’s had ceased, and declared the statute inapplicable and reversed the judgment.
 
 In re Cruson’s Estate
 
 (1950), 189 Ore. 537 [221 P.2d 892, 20 A.L.R.2d 219, 235]
 
 *900
 
 is the reverse of
 
 Sauers
 
 v.
 
 Stolz.
 
 In the Cruson ease, the trial court fóúnd that the husband had survived, but the reviewing court declared that finding to be without evidentiary support and reversed the trial court upon the ground that there was no sufficient evidence that the husband and wife died otherwise than simultaneously and the simultaneous death statute was applied. To the same general effect, examine the cases cited in
 
 In re Cruson’s Estate,
 
 the annotations thereto in 20 A.L.R.2d 235, and Uniform Laws Annotated, vol. 9A, page 265, and the 1953 Cumulative Annual Pocket Part thereof.
 

 The cases cited also hold with remarkable uniformity that if there is any sufficient evidence that either party survived the other, even when the deaths occur at substantially the same time, the statute is inapplicable and the question of survivorship must be determined as any other fact. No case has been found indicating that mere difficulty in determining which one survived justifies the court in abandoning the task and seeking shelter under the protecting arms of the simultaneous death statute. In
 
 Sauers
 
 v.
 
 Stoltz (supra),
 
 the trial court was reversed because it attempted to do so.
 

 Referring now again to the trial court's engrossed statement of the evidence, we cannot find in it anything indicating even a remote possibility of simultaneous death. On the contrary, the evidence shows beyond any reasonable doubt that they could not have so died. This is not a catastrophe which befell both Anthony Mathews and Sylvia McKinney at the same instant of time and from which both perished from the identical cause, which is the typical case for the application of the simultaneous death act. All the evidence indicates that they died as the result of two separate and distinct acts, two separate shots from a deadly weapon. The evidence of a struggle of some considerable duration between Gussie and Anthony, ending in his death, when considered with the evidence relating to Sylvia’s death and the location of her body and the surrounding conditions, dispels every inference of simultaneous death except upon the fantastic theory wholly without evidentiary support that after wounding Anthony by a shot which did not produce instant death, Gussie killed Sylvia at the very instant when Anthony expired. Every reasonable inference from the evidence is that one of them survived the other. There is both sufficient and abundant evidence that, to quote again the words of the statute, “they have died otherwise than simultaneously,” and therefore the conditions specified by the statute have not been
 
 *901
 
 met. Furthermore, it should be noted that there is nothing in the record to indicate that the trial court arrived at its judgment by applying that statute.
 

 The purpose of the Uniform Simultaneous Death Act is to supplant the former arbitrary and complicated presumptions of survivorship with effective, workable, and equitable rules applicable to the ever-increasing number of eases where two or more persons have died under such circumstances that there is no sufficient evidence to indicate that they have died otherwise than simultaneously. (See note to
 
 In re Cruson’s Estate,
 
 20 A.L.R.2d 236, par. 1.) It therefore occupies a very narrow field, and the conditions for its application are meticulously stated and with precise particularity. If it had been intended to apply under any other condition, they could have been easily specified. The extension of its field urged by the respondent would in effect be adding to the statute other conditions which the legislative authority has seen fit to omit, and would he judicial legislation.
 

 For the reasons stated, we therefore conclude that the findings and judgment of the trial court are not supported by either the evidence or the law, and the judgment is reversed and the cause remanded for a new trial.