## Saligman Estate

*Paul P. Wisler* and *Zoob & Matz*, for petitioner.

*Malis, Malis & Malis* for respondents.

TAXIS, P. J., December 18, 1957.—This matter comes before the court upon petition of Bernard Zitin, administrator of the estate of Lillian Saligman, deceased,

for an order requiring additional security upon sale of real estate pursuant to section 541 of the Fiduciaries Act of 1949. Upon his qualification, Mr. Zitin entered bond in the amount of $1,000.

The petition avers that Lillian Saligman and her husband, Martin Saligman, owned their residence real estate known as 506 Latmer Road, Merion, Montgomery County, as tenants by the entireties; that Lillian and Martin Saligman both died on November 9, 1956, in a common disaster in the form of a fire which occurred at their residence. Petition avers that Lillian Saligman survived her husband by a few minutes, that she thereupon became sole owner of the 506 Latmer Road premises as surviving tenant, and that this real estate having since been sold, the proceeds of the sale constitute part of the assets of Lillian Saligman's estate. The proceeds, $40,000, are presently held by a title insurance company awaiting arbitration pending a determination of the issue of survivorship.

An answer denying all material averments was filed by the executors of the estate of Martin Saligman. Determination of the question of survivorship incident to the petition for additional security concerns a basic question of distribution, therefore all interested parties, namely, the administrator of the estate of Lillian Saligman, the executors of the estate of Martin Saligman and Harvey Saligman, a minor, and Rita Saligman Cooper, sole surviving heirs of the estates of Martin and Lillian Saligman, and Arnold Zitin, guardian of the estate of Harvey Saligman, a minor, have entered into a stipulation in which they agree that the petition and hearing held shall be considered as a petition for a declaratory judgment and that the issue to be determined is whether Lillian Saligman survived her husband, Martin Saligman. Whether petitioner shall be required to enter additional security will de-

pend upon whether the evidence supports a finding that Lillian Saligman survived her husband. The parties further stipulate and agree that the testimony already taken shall be considered as the total testimony in support of the petition for declaratory judgment.

A hearing was held on October 2, 1957, at which time the sole witness called to testify was Arnold S. Zitin, brother of Lillian Saligman. Mr. Zitin testified that on the morning of November 9, 1956, after being notified of the fire by a neighbor, he rushed to the house of his sister and brother-in-law. He arrived on the scene at about 7 a.m., and the firemen had just broken down the front door and were pouring water into the house. Mr. Zitin frantically told the firemen that three people were in the house and attempted to enter. The firemen, however, restrained the witness, bodily carrying him away. In the meantime, firemen at the other end of the house had brought the fire under control, had found the occupants and had taken them downstairs. Shortly thereafter an unidentified fireman emerged from the house and told Mr. Zitin that there was life in the woman.

At this point the witness rushed into the house and saw his sister, Lillian Saligman, lying in the dining room wrapped in a blanket. Two firemen were working on her with a pulmotor. Mr. Zitin bent over his sister, touched her, and observed that she was breathing. As the firemen continued working on the sister, the witness stepped back and noticed his brother-in-law lying on his stomach in the living room dressed in his pants and pajama tops. One man was working on the brother-in-law giving him artificial respiration. Mr. Zitin touched his brother-in-law, observed that he was cold and not breathing. At no time, however, did Mr. Zitin observe his brother-in-law when artificial respiration was not being administered to him.

Mr. Zitin remained with his sister for approximately five or ten minutes and observed her breathing "like sighing" without the pulmotor. The fireman then took Mr. Zitin outside. Approximately 25 minutes later he saw Dr. Gerber arrive.

In a sworn affidavit offered in evidence without objection, Dr. Gerber averred that he arrived at the home of Martin and Lillian Saligman on the morning of November 9, 1956, at approximately 7:45 a.m., that upon arrival he found Martin Saligman in the living room, examined him and determined that he was dead. He then went to the dining room at the request of firemen, examined Lillian Saligman, who was lying on the floor, and to whom oxygen was being administered, and pronounced her dead. He was unable from his observations to determine who died first.

Section 3 of the Uniform Simultaneous Death Act of June 19, 1941, P. L. 138, sec. 3, 68 PS §523, reads as follows:

"Where there is no *sufficient evidence* that two . . . tenants by the entirety have died otherwise than simultaneously, the property so held shall be distributed, one-half as if one had survived, and one-half as if the other had survived." (Italics supplied.)

There appears to be no Pennsylvania cases defining the term "sufficient evidence" as used in this statute.

"The burden of proof of survivorship as to persons perishing in a common disaster, falling upon the party whose claim is dependent upon survivorship, is unaffected by the act. While the phrase 'sufficient evidence,' as used in the act, has been construed to mean evidence which would satisfy an unprejudiced mind, it would seem that, basically, the question as to the amount of proof necessary to establish survivorship depends upon the existing rules in that respect and is not affected by

the act, since the act, by its express terms, applies only where there is no sufficient evidence that the persons died otherwise than simultaneously": 16 Am. Jur., Death, §42.

The rules in effect in Pennsylvania at the time of the adoption of the uniform act on the question of survivorship were stated in Baldus v. Jeremias, 296 Pa. 313, at page 317, 318.

"Where, as here, two perish in a common disaster there is no presumption as to survivorship. While it may be shown by circumstantial evidence, like any other fact, yet the circumstances must be such as to satisfy reasonably well balanced minds of the existence of the facts sought to be established . . . 'The preliminary question of law for the court is, not whether there is literally no evidence, or a mere scintilla, but whether there is any that ought reasonably to satisfy the jury that the fact sought to be proved is established.' " Cf. Kimmey's Estate, 326 Pa. 33.

"The fact of survivorship does not require any higher degree of proof than any other fact in a civil case. Where the party bearing the burden of proof establishes the fact of survivorship by a preponderance of the evidence which is competent and sufficient when tested by the general rules of evidence in civil cases, the verdict should be in his favor": 16 Am. Jur., Death, §43.

Courts in other jurisdictions have considered the problem of what constitutes "sufficient evidence" as that term is used in the Uniform Simultaneous Death Act. The Supreme Court of Colorado stated:

"The statute is inapplicable if there is evidence as to which one of the parties survived the other or if there are particular circumstances from which the fact of survivorship may be inferred. The presumption of simultaneous death of the parties was not intended to

take the place of competent, positive and direct evidence, and the fact of survivorship requires no higher degree of proof than any other fact in the case." Sauers v. Stoltz, 121 Colo. 456, 458, 218 P. 2d 741, 742.

In that case a husband and wife were both killed in a head-on auto collision, and the evidence was limited to the testimony of two lay witnesses who arrived on the scene within two minutes of the crash. Both testified that the wife's body was twisted and showed no heartbeat, whereas the husband's heartbeat was perceptible and his bleeding occurred in spurts. This testimony was considered to be sufficient evidence to establish that the husband survived his wife.

In In re DiBella's Estate, 100 N.Y.S. 2d 763, the evidence considered by the court in determining the applicability of the Uniform Simultaneous Death Act consisted of (1) the relative state of decomposition of the bodies upon discovery and (2) the testimony of a witness who saw nothing but had heard the hard labored breathing which she thought to be that of the husband after the asthmatic breathing thought to be that of the wife had stopped. The court in this case concluded that the evidence was ". . . sufficient, in my opinion, to constitute a fair preponderance of all the evidence in relation to the issue of survivorship . . .": page 772.

Finally, in In re Cruson's Estate, 189 Or. 537, 221 P. 2d 892, at page 562, the court stated:

"Section 1 of the Uniform Simultaneous Death Act requires proof of survivorship to be established by sufficient evidence. Evidence is sufficient when it satisfies an unprejudiced mind."

In the present case, the critical evidence consists of the positive testimony of a single eye witness. This testimony was uncontradicted, was not shaken upon cross-examination and is all that is available. I con-

438

clude and herewith find that this evidence is sufficient to establish the fact of survivorship of Lillian Saligman.