[Civ. No. 295.    Fifth Dist.    June 24, 1964.]

Estate of JOSEPH A. MEADE, Deceased. MICHAEL J. MEADE, Petitioner and Appellant, v. SECURITY FIRST NATIONAL BANK, as Trustee, etc., Claimant and Respondent.

Clifford W. Twombly, Russell B. Henry, Joseph L. Soares and George Simpson for Petitioner and Appellant.

Sheppard, Mullin, Richter & Hampton, George R. Richter, Jr., Thomas R. Sheppard and Berge Lion for Claimant and Respondent.

CONLEY, P. J.—This proceeding and its companion, *Estate of Grace Josephine Meade, Deceased, post,* p. 841 [39 Cal.Rptr. 284], involve orders of the probate court relative to the devolution of joint tenancy and community property and depend upon the meaning and effect of the California Uniform Simultaneous Death Act. (Prob. Code, §§ 296 to 296.8.)

Petitioner and appellant, Michael J. Meade, is the adopted son of Joseph A. Meade and Grace Josephine Meade, both of whom were killed in the crash of a private airplane in the remote Lebec country in Kern County. Each died leaving a will; the probate court expressly found that there was no sufficient evidence that they died otherwise than simultaneously. The will of Joseph A. Meade disposed of the residue of his estate to the respondent bank in trust; Grace Josephine Meade's will left her estate to respondent in trust if her husband predeceased her. The validity of neither will is questioned; neither will mentioned nor provided for the possibility of a simultaneous death of the husband and wife.

The two cases test the applicability of Probate Code sections 296 to 296.8, which constitute the California Uniform Simultaneous Death Act, to the wills of the Meades. Appellant maintains that because of the act they in effect died intestate and that the estate of each should be distributed outright to him as sole heir. On the contrary, respondent contends that the estates will be properly distributed to respondent, Security First National Bank, as trustee.

Both wills were executed on June 14, 1946, at Los Angeles. On December 1, 1960, the Meades disappeared on a private airplane trip; on August 23, 1961, the wrecked airplane and the bodies of the two decedents were found. On November 13, 1961, the two wills were admitted to probate, and letters testamentary were issued to respondent.

On December 11, 1961, the Tulare County Superior Court determined that:

"1) Joseph A. Meade and Grace Josephine Meade both died on December 1st, 1960.

"2) The title to property and its devolution depends upon the priority of their deaths.

"3) They died under circumstances where there is no sufficient evidence that they died otherwise than simultaneously."

On October 18, 1962, appellant, Michael J. Meade, filed a petition to determine his interest in the estates and on Jan-

172

uary 3, 1963, the Security First National Bank, which is the successor by merger of the corporation declared trustee in the wills, filed in each proceeding a "Statement of Claim of Interest in Estate and Right to Distribution."

On January 28, 1963, the hearing was held and on March 13, 1963, the court filed findings of fact and conclusions of law in each proceeding and ordered that decedent Joseph A. Meade's personal effects should be distributed to Michael Joseph Meade and the residue of the estate to the respondent bank as trustee to be administered according to the trust provisions contained in the last will of Joseph A. Meade as applicable upon the death of Grace Josephine Meade; the court also ordered that all of the property of Grace Josephine Meade should go to the respondent bank as trustee to be administered under the trust provisions in the will as if Joseph A. Meade had predeceased her. Appellant's motions for a new trial were denied. During their lifetime decedents owned both joint tenancy property and community property.

While the two cases were not consolidated for hearing in the court below or on appeal, and it will be necessary to file a brief separate opinion in the Estate of Grace Josephine Meade, the questions involved on the two appeals are identical and we shall here discuss matters that pertain to both estates.

Appellant presents the following questions:

1) Does any property which decedents owned as joint tenants at the time of their simultaneous deaths pass by reason of the provisions of the act and the wills?

2) Does community property of the respective parties pass under the provisions of the act and the respective wills of Mr. and Mrs. Meade?

3) Do the dispositive provisions of the wills prevail or do they in any respect fail?

The trial court held that the Uniform Simultaneous Death Act was applicable to the estates of both of the decedents and that, as each of them had made a will in proper form, the wills were also effective. The court considered that the act defined in applicable instances the exact property which would be controlled by the wills at the time of death.

As is said in *Azvedo* v. *Benevolent Society of California*, 125 Cal.App.2d Supp. 894, 901 [270 P.2d 948]: "The purpose of the Uniform Simultaneous Death Act is to supplant the former arbitrary and complicated presumptions of survivorship with effective, workable, and equitable rules applicable to the ever-increasing number of cases where two or

more persons have died under such circumstances that there is no sufficient evidence to indicate that they have died otherwise than simultaneously. . . . It therefore occupies a very narrow field, and the conditions for its application are meticulously stated and with precise particularity.''

It is not important for the decision of these cases whether the questioned code sections are characterized as statutes of succession (see conflicting viewpoints in *Estate of Wedemeyer*, 109 Cal.App.2d 67 [240 P.2d 8] and *Estate of Hudson*, 158 Cal.App.2d 385, 389 [322 P.2d 987]) ; the important fact is that the act effectively specifies in certain categories the property which each of the simultaneously deceased persons was entitled to dispose of at the time of death. Appellant wrongly contends that the wills of the decedents are not effective in view of the statute and the manner of their deaths. Each of the wills of the parties, being proper in form and having been correctly executed, controls the respective estates.

The applicable provisions of Mr. Meade's will were as follows:

''FOURTH: I give, devise and bequeath all my automobiles, jewelry, silver, books, pictures, guns, paintings, works of art, household furniture and furnishings, clothing and other personal effects to my wife, GRACE JOSEPHINE MEADE, and if she predecease me then the said property shall go to my son, MICHAEL JOSEPH MEADE.

''. . . . . . . . . . . . . . . .

''SIXTH: I give, devise and bequeath the residue of my estate, real   and personal, wherever situated, including all failed and lapsed gifts, hereinafter termed the 'Trust Estate,' to the FARMERS AND MERCHANTS NATIONAL BANK OF LOS ANGELES, a National Banking Association, in trust, to hold, manage and distribute as follows:''

Grace Josephine Meade's will left all of her property to her husband and if her husband should predecease her, then to respondent bank in trust for appellant, Michael J. Meade.

In the Estate of Joseph A. Meade, the court determined the right to distribution as follows:

(1) All of said decedent's automobiles, jewelry, silver, books, pictures, guns, paintings, works of art, household furniture and furnishings, clothing and other personal effects, or any interest therein belonging to said decedent or said estate, shall be distributed to Michael Joseph Meade;

(2) The residue of that estate shall be distributed to the claimant Security First National Bank, as trustee, to be administered by said trustee in accordance with the trust provisions contained in said decedent's last will and testament applicable to Michael Joseph Meade upon the decease of Grace Josephine Meade.

In the estate of Grace Josephine Meade the court held that all of the property of that estate should be distributed to the Security First National Bank, as trustee, in the same manner as if Joseph A. Meade had predeceased said decedent.

Respondent maintains that each of the decedents "left a valid, unambigious, unconditional will, disposing of his entire estate," and that one-half of any joint tenancy property passed under decedent's will to respondent bank, in trust, upon the terms stated in the will, that Probate Code section 296.4 is a "constitutional regulation of inheritance" applying to testacy as well as intestacy, and that the trial court properly held that one-half of the community estate of decedent Grace Josephine Meade and her husband passes under Grace Josephine Meade's will as if it were her separate property, and one-half of the community estate of Joseph A. Meade and his wife passes through Joseph A. Meade's will as if it were his separate property.

On the other hand, the appellant contends that in view of the existence of the Uniform Simultaneous Death Act and the facts relative to the deaths of the testator and testatrix the wills were no longer effective and that it is necessary in each instance to distribute the estate in accordance with division 2 of the Probate Code.

Appellant argues that the act was intended as a succession statute only and that it is not applicable to the dispositive provisions of wills; he refers to the history of the Uniform Simultaneous Death Act leading to its adoption as set forth in the 1959 Pocket Supplement to 9 Wigmore on Evidence (3d ed.) section 2532a, pages 185 et seq.; that the lack of any provisions in the wills relative to the possible simultaneous death of the parties constitutes a fatal omission which cannot be remedied by a court, and that as the act is a statute of succession the property of the two decedents must go directly to the adopted son of the parties, Michael J. Meade, under the laws of intestacy.

With respect to joint tenancy property, Probate Code section 296.2 provides in part that: "Where there is no sufficient evidence that two joint tenants have died otherwise

than simultaneously the property so held shall be administered upon, distributed, or otherwise dealt with, one-half as if one had survived and one-half as if the other had survived.''

The words ''administered upon,'' ''distributed,'' or ''otherwise dealt with'' were added to section 296.2 of the Probate Code in 1951; respondent urges that the Legislature's intent is made clear by the amendment and that when there is no evidence that two decedents, who were joint tenants, died other than simultaneously, the personal representative of each would have a right to one-half of the property; since half of the joint tenancy property must be ''administered upon'' and ''distributed'' as if each of them had survived his spouse, the one-half interest under each will must pass to the respondent bank as alternative legatee. The probate judge agreed and correctly held that one-half of the joint tenancy property, which the decedents owned prior to their deaths, passed under the will of Mr. Meade to the trustee named in his will and that one-half of such property passed under the will of Mrs. Meade.

As to community property, Probate Code section 296.4 states that: ''where a husband and wife have died, leaving community property and there is no sufficient evidence that they have died otherwise than simultaneously, one-half of all the community property shall be administered upon, distributed, or otherwise dealt with, as if the husband had survived and as if said one-half were his separate property and the other one-half thereof shall be administered upon, distributed, or otherwise dealt with, as if the wife had survived and as if said other one-half were her separate property, except as provided in section 296.3.''

The probate judge also held that the terms of the two wills had to be given effect in accordance with the provisions of section 296.4 of the Probate Code, and that the decedent's share of the community property in each estate should be disposed of in the same manner as if the testator had survived and this constituted the whole of his estate, he never having inherited from the other.

On all of these issues, we approve the viewpoint of the probate judge.

A question remains whether the provisions of the wills are ineffectual because of some peculiar wording of the instruments. In pursuing this inquiry, we must keep in mind the leading principles that a will should be construed

in accordance with the intention of the testator and that, if reasonably possible, construction should favor testacy, especially where the entire estate is disposed of (*Estate of Karkeet,* 56 Cal.2d 277 [14 Cal.Rptr. 664, 363 P.2d 896]; *Estate of Heard,* 25 Cal.2d 322 [153 P.2d 553]; 20 A.L.R.2d 220 et seq.).

In the fourth numbered paragraph of his will, Mr. Meade provided that his automobiles, jewelry, silver, books, pictures, guns, paintings, works of art, household furniture and furnishings, clothing and other personal effects should go to his wife ". . . and if she predecease me then the said property shall go to my son, Michael Joseph Meade." It will be noted that the proviso "if she predecease me" has not been literally complied with because both husband and wife died simultaneously. The intention of the testator, however, is perfectly clear; the clause, "if she predecease me," is equivalent to words not used but understood—"if she shall not survive me." The United States Supreme Court has held that the intention of the testator is dominant and that in a case of this kind the literal meaning of a provision in a will must give place to a clearly indicated inferential desire of the person making the will. *Young Women's Christian Home* v. *French,* 187 U.S. 401 [23 S.Ct. 184, 188-189, 47 L.Ed. 233] provides: "As in all of these cases, so in this, we are remitted to the language of the will to ascertain the intention of the testatrix, and if that intention is clearly deducible from the terms used, taking the whole will together, then we are bound to give that construction which will effectuate, and not defeat, it. Reading this will from the standpoint of the testatrix, as we must, we think it not open to doubt that she intended to dispose of all her estate, and did not intend to die intestate as to any part of it; that she had in mind only three objects of her bounty, her husband, her son, and the home, and that her intention, failing her husband and son was that the home should take. If husband alone survived it was to go to the home at his death. If neither husband nor son survived it was to go to the home at once. Is her manifest intention to be defeated because, instead of saying, 'If neither my husband nor my son should survive me, I give and bequeath my property to the home,' she said: 'In the event of my becoming the survivor of both my husband, Oliver Wheeler Rhodes, and of my son, Eugene Rhodes, I then give, devise and bequeath all my property . . . to the Young Women's Christian Home?'

"We do not feel compelled to so hold, and, by accepting so technical and literal a view, to reach an adverse result on the theory of a change in the burden of proof, or of an accidental omission to prevent it. This is not a case of supplying something omitted by oversight, but of intention sufficiently expressed to be carried out on the actual state of facts. And as the estates of persons perishing in a common disaster, intestate, notwithstanding the statutes of descent and distribution may not have made provision in respect thereof, are disposed of as if each survived as to his own property, we think, upon principle, that the property of Mrs. Rhodes should go as directed as if she survived her son, in the absence of proof to the contrary.''

The Uniform Simultaneous Death Act is constitutional; it is appropriate legislation which wisely and specifically fills gaps which previously existed in the law concerning the disposition by will or succession of joint tenancy and community property in the event that a formal hearing shows that there is no sufficient evidence that a husband and wife died otherwise than simultaneously.

The judgment determining interests in the estate is affirmed.

Brown (R.M.), J., concurred.

Stone, J., deeming himself disqualified, did not participate.

A petition for a rehearing was denied July 21, 1964, and appellant's petition for a hearing by the Supreme Court was denied August 20, 1964.