*In re* ESTATE OF BERTHA MORAN, Deceased.—(WAYNETTE SCHNEBERGER, Adm'r of the Estate of Ronald W. Moran, Deceased, Petitioner-Appellee, *v.* OWEN A. MORAN, Adm'r of the Estate of Bertha J. Moran, *et al.*, Respondents-Appellants.)

First District (2nd Division)   No. 77-1505

Opinion filed December 26, 1978.

John C. Williams, Arlene C. Erlebacher, and Kathryn E. Korn, all of Chicago, for appellants.

Adamowski, Newey & Adamowski, of Chicago (Frank C. Stanley, Paul D. Newey, and Robert E. Adamowski, of counsel), for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

On November 12, 1975, Bertha J. Moran ("Bertha") and Ronald W. Moran ("Ronald") were found dead from carbon monoxide poisoning in a car parked in their garage in Riverside, Illinois. On December 18, 1975, the circuit court of Cook County entered an order finding that at her death Bertha left three heirs at law, sons Owen and Roger and daughter Jane Moran Traeger.

Following a bench trial on a petition to amend the table of heirship to include the deceased son Ronald, the trial court found that Ronald had survived Bertha and accordingly granted the petition.[1] This appeal seeks the reinstatement of the December 18, 1975, table of heirship or a new trial.

The crucial issue raised on appeal is whether under the provisions of the simultaneous death act (Ill. Rev. Stat. 1975, ch. 3, par. 41a), there was "sufficient evidence" to prove that Bertha died before Ronald. Other issues concern rulings by the trial court on numerous evidentiary matters.

---

[1] Bertha's will names Ronald, a bachelor, as the principal beneficiary with only $1 to each of the other three children. Ronald's will left all of his property to Bertha, unless she failed to survive him for thirty days, in which case there were 25 separate bequests of $1,000 with the balance to appellee Waynette Schneberger, a good friend, and not related to the Morans.

The petitioner called four witnesses: Riverside Police Sergeant George Metsch, the first person to arrive at the death scene; Dr. Henry Swiontek, the decedents' family physician for three years immediately preceding their deaths; and Drs. Robert J. Stein and Isadore Pilot, pathologists retained to express their opinions as to "who died first."

Sergeant Metsch testified that upon arriving at the garage at approximately 4 p.m., he saw smoke or fumes curling upward from underneath the overhead garage door, observed that the area in front of this door was blackened by carbon stains, and noted that all of the entrances to the garage were closed and locked. Although Metsch initially testified that he had not smelled the fumes until the garage window had been pried open, he later stated that he had smelled the fumes upon his approach to the garage.

When the Fire Department's Emergency Medical Technician Team ("EMTs") arrived, one of the members of the team attempted to enter the garage through the window but was forced back by the heavy fumes. A second EMT successfully entered but returned coughing and gasping. Later, another EMT re-entered the garage, turned the engine off, and opened the overhead garage door.

Sergeant Metsch testified that he found Ronald slumped in the driver's seat and Bertha slumped toward him in the adjacent passenger seat approximately 1½ to 2 feet apart. He further testified that the exposed portions of their bodies were tinged reddish (characteristic of carbon monoxide poisoning) and that neither exhibited any sign of life.

Dr. Swiontek testified that he had treated Ronald for various ailments including respiratory infections on eight occasions during the period of June 1972 to November 1974. Ronald's chest X ray taken in June 1972 showed clear lung fields and no pathology. Dr. Swiontek last treated Ronald in November 1974, at which time he was suffering from a respiratory infection and weighed approximately 180 to 190 pounds.

Dr. Swiontek first treated Bertha in November 1972 for a "small stroke" or "vasospasm" for which he prescribed a vasodilator to increase the circulation to her brain. Dr. Swiontek stated that Bertha had suffered no residual neurological deficit as a result of this stroke, and that she had responded favorably to his treatment. He next attended Bertha in September 1973 when she was hospitalized for hip surgery which left her confined to a wheelchair. Chest X rays taken at this time showed normal lung fields but some calcification or sclerosis of her aorta. In November 1973, Dr. Swiontek treated Bertha for anemia which he testified persisted but which he refused to conclude was permanent. Dr. Swiontek last examined Bertha the day before her death at which time her blood pressure and heart sounds were normal as they had been on each of her biweekly visits since 1972.

Based on the foregoing testimony and Bertha's and Ronald's ages of 79 and 41 respectively, Dr. Stein concluded that Bertha had predeceased Ronald. However, Dr. Stein acknowledged that he had neither examined the decedents during their lifetimes nor performed autopsies on them at their deaths. Therefore, he necessarily stated that his opinion was based on his experience that "in most cases" a 79-year-old woman would have vascular changes diminishing the circulation of oxygen to her vital organs, and "going on averages" a 40-year-old male would have minimal vascular changes. Dr. Stein also stated that many other factors, including respiratory disease, might cause an individual to inhale more carbon monoxide during a shorter period of time than a person breathing without a respiratory impediment.

Dr. Pilot testified that he was currently a board certified pathologist who had been licensed to practice medicine in 1917, had taught pathology for 40 years, and had practiced and consulted in pathology and internal medicine throughout his medical career. During the course of his practice, Dr. Pilot had observed over 100 carbon monoxide poisoning patients. In response to the same hypothetical question as posed to Dr. Stein, Dr. Pilot also concluded that Bertha had predeceased Ronald.

The respondents called two witnesses: Riverside Fire Chief Anthony Bednarz, an EMT present at the death scene, and Dr. Charles Petty, a forensic pathologist. Other than estimating Bertha's and Ronald's weights to be 160 and 220-230 pounds respectively, Officer Bednarz's testimony merely corroborated that of Officer Metsch.

Dr. Petty testified that in the absence of such determinative factors as the air currents in the garage at the time in question, the nature and extent of the decedents' activities immediately preceding their deaths, and the decedents' quantity and rate of carbon monoxide intake, one could not determine with a reasonable degree of medical or scientific certainty whether either had survived the other. Although Dr. Petty acknowledged that individuals having severe and advance arteriosclerotic heart disease might succumb at lower levels of carbon monoxide than those without such a disease, he also stated that the calcification of Bertha's aorta did not appear to be advanced enough to have any effect on her ability to withstand the effects of carbon monoxide.

Based on the foregoing evidence, the trial court found that Ronald had survived Bertha, amended the December 18, 1975, table of heirship to include Ronald as an heir, and denied the respondents' post-trial motion for reconsideration and modification or a new trial. It is from these orders that the respondents appeal.

I.

The threshold issue is whether Ronald survived Bertha. Or to state

the issue another way, was the trial court's finding contrary to the manifest weight of the evidence.

The simultaneous death act (Ill. Rev. Stat. 1975, ch. 3, par. 41a) provided in relevant part on the date of the deaths as follows:[2]

> "Where the title to property or the devolution thereof depends upon priority of death and there is no sufficient evidence that the persons have died otherwise than simultaneously, the property of each person shall be disposed of as if he had survived, except as provided otherwise in this Article."

■■ This statute does not alter the rules of evidence (*Prudential Insurance Co. of America v. Spain* (4th Dist. 1950), 339 Ill. App. 476, 482, 90 N.E.2d 256), and there is no presumption of survivorship which is a fact to be established like any other fact (*In re Di Bella's Estate* (1951), 279 App. Div. 689, 107 N.Y.S.2d 929, 930).

The words "sufficient evidence" as used in the statute have been construed to mean preponderance of the evidence. Thus, the petitioner had the burden of proving Ronald's survivorship by a preponderance of the evidence. (*Prudential Insurance Co. of America v. Spain*, at 482; *Smith v. Smith* (1972), 361 Mass. 733, 736, 282 N.E.2d 412, 414.) Although this standard of proof required only that the petitioner prove that it was more probably true than not true that Ronald had survived Bertha, and death, like any other fact, may be proved by circumstantial evidence (*In re Estate of Schmidt* (1968), 261 Cal. App. 2d 262, 271, 67 Cal. Rptr. 847), our review of the cases interpreting the simultaneous death act in other jurisdictions reveals that this burden had not been readily met.

For example, this court, as well as courts in other jurisdictions, has found such compelling evidence as differences in post-mortem conditions insufficient to prove survivorship. (See *In re Englebirt's Will* (1918), 184 App. Div. 314, 171 N.Y.S. 788; *In re Burza's Estate* (1934), 151 Misc. 577, 272 N.Y.S. 248; *In re Estate of Hels* (1st Dist. 1934), 278 Ill. App. 185 (decided prior to the adoption of the uniform simultaneous death act); *cf. In re Di Bella's Estate* (1950), 199 Misc. 847, 100 N.Y.S.2d 763, *aff'd* (1951), 107 N.Y.S.2d 929.) Moreover, we note that those courts concluding that one of the decedents had survived the other had been supplied with either eyewitness testimony as to survival (*In re Estates of Davenport* (1958), 79 Idaho 548, 323 P.2d 611; *Prudential Insurance Co.*; *Sauers v. Stolz* (1950), 121 Col. 456, 218 P.2d 741), or other post-occurrence evidence tending to show survival (see *United Trust Co. v. Pyke* (1967), 199 Kan. 1, 427 P.2d 67). Upon a review of the record before

---

[2]Ill. Rev. Stat. 1975, ch. 3, par. 3—1, replaced this paragraph but did not take effect until January 1, 1976, subsequent to the deaths at issue here. The recodification rendered no substantive change in the statute.

this court, it is apparent that the petitioner failed to supply the trial court with any of the foregoing evidence.

■■ The petitioner's proof consisted solely of evidence of Bertha's advanced age and her prior medical history of a small stroke syndrome, anemia, and a calcified aorta to create the negative inference that Ronald, whom they argue was perfectly healthy, necessarily must have survived her. We find such evidence standing alone insufficient to render the Simultaneous Death Act inapplicable. As stated in *Smith v. Smith* (1972), 361 Mass. 733, 736, 282 N.E.2d 412, 414:

> "There [is] no presumption that any victim * * * survived any other, based on age, sex and physical condition, though such facts, so far as material, were to be considered *in connection with the other circumstances* * * *. [Citation.]" (Emphasis added.)

■■ In the absence of evidence of differing post-mortem conditions, eyewitness testimony as to survival, the air currents in the garage at the time in question, the decedents' physical exertions immediately preceding their deaths, and the metabolic and respiratory rates, we find the petitioner's evidence speculative at best. Speculation is not a proper substitute for proof. *Hawkins v. Richardson* (1st Dist. 1975), 29 Ill. App. 3d 597, 599, 331 N.E.2d 201.

Counsel for the petitioner conceded in oral argument before this court that the only evidence in this record that indicates a distinguishing element of difference in the conditions of the bodies either at the time of discovery or upon examination after discovery was the quantity of carbon monoxide in the bodies. A toxicologist's report from the Cook County coroner's office indicates that Bertha had 52 percent concentration of carbon monoxide in her blood and Ronald had 64 percent. It is also to be remembered that no autopsy was performed on either body.

■■ In reaching our decision, we are not unmindful of the fact that, when the evidence is contradictory, the trial judge as the trier of fact is in a position superior to this court to weigh the evidence and determine the preponderance thereof. (*Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 356, 226 N.E.2d 624.) For this reason, we also recognize that although a trial court's holding is always subject to review, this court may not disturb a trial court's finding and substitute its own opinion unless the holding of the trial court is manifestly against the weight of the evidence. (*Schulenburg.*) However, our review of the evidence and the law reveals that the petitioner's proof failed to meet that required to prove survivorship by a preponderance of the evidence. Based on such a record, and taking into consideration the testimony of the predeath medical history in this record, we conclude that petitioner failed to establish by a preponderance of the evidence that Bertha's and Ronald's deaths were otherwise than simultaneous. We consider the question of who died first,

based on this record, to be too speculative, and any conclusion would of necessity be based on pure guess. Accordingly, we find that the trial court's holding that Ronald survived Bertha was manifestly against the weight of the evidence and must be reversed. See *City of Carbondale v. Grose* (1971), 49 Ill. 2d 367, 273 N.E.2d 832.

## II.

■■ Numerous alleged erroneous rulings on evidentiary matters were urged by the respondents. In consideration of our conclusion in this matter, we deem it unnecessary to comment on each alleged error. Suffice it to say we have taken into consideration, in reaching our conclusion, all of the evidence respondents claim was erroneously admitted. The issue regarding the speculative nature of the testimony of Dr. Stein and Dr. Pilot can best be answered by the conclusion that their testimony was admissible, and that the question is the weight to give such testimony.

For the foregoing reasons, we reverse and remand with directions to modify the order to conform with the table of heirship entered on December 18, 1975.

Reversed and remanded.

STAMOS, P. J., and BROWN,[3] J., concur.

---

[3] Justice Brown participated in this decision while assigned to the Illinois Appellate Court, First District.