[S. F. No. 5625.   Department Two.—August 23, 1911.]

## In the Matter of the Estate of WALLACE E. LOUCKS, Deceased.

ESTATE OF DECEASED PERSON—PERSONS KILLED IN SAME CALAMITY— PROOF OF SURVIVORSHIP.—In a proceeding for the distribution of the estate of a deceased person, which involves the determination of

the question of the survivorship of two persons who were killed in the same calamity, the fact of survivorship must be established by a preponderance of evidence, not because the heirs of one decedent or of another begin a contest, but because it is the duty of the court to determine the matter of heirship and survival. This duty would still exist whether any one instituted any proceeding or not.

ID.—EVIDENCE OF SURVIVORSHIP—APPLICATION OF PRESUMPTION.—In the absence of preponderating evidence to the contrary, the question of the survivorship of such persons is to be determined in accordance with the presumptions of subdivision 40 of section 1963 of the Code of Civil Procedure.

ID.—PRESUMPTIONS OF SURVIVORSHIP WHEN APPLICABLE.—The presumptions of survivorship provided for in that section are applicable only where the relative times of the death of persons perishing by the same disaster cannot be shown by direct or circumstantial evidence or both.

ID.—CONFLICT OF EVIDENCE AS TO TIMES OF DEATH—APPEAL.—Where the evidence as to the relative times of the death of such persons is conflicting, a finding of survivorship contrary to the legal presumptions will not be disturbed on appeal.

ID.—NEW TRIAL—NEWLY DISCOVERED EVIDENCE.—Newly discovered evidence which is merely cumulative is not ground for a new trial.

ID.—EVIDENCE — CROSS-EXAMINATION — ARGUMENTATIVE QUESTION.— Where a witness, on his cross-examination, is shown to have made contradictory statements, concerning a fact in dispute, it is not error to sustain an objection to the further question, "Can you reconcile the two statements?" Such a question is argumentative, and designed to involve the witness in an argument.

ID.—MEDICAL EXPERT—EVIDENCE OF THE EXTENT OF INJURIES—ABSENCE OF CHANGE IN CONDITION OF BODY.—A medical witness may be asked to describe the extent of the injuries of one of the persons killed, where there is nothing to show that any manipulations to which the body had been subjected had effected any material change in its condition between the time when the injuries were inflicted and the time when he examined it.

ID.—NON-MEDICAL WITNESS—OPINION AS TO LIFE IN PERSON INJURED.— A non-medical witness cannot be asked whether it appeared to him that one of the persons killed was alive a few minutes after the injuries were inflicted. Such a question calls for the opinion of the witness on a matter as to which he is incompetent. The witness can only testify to the facts observed by him supporting his belief.

APPEAL from a decree of the Superior Court of the County of Fresno distributing the estate of a deceased person and from an order refusing a new trial. H. Z. Austin, Judge.

The facts are stated in the opinion of the court.

E. E. Shepard, J. M. Walthall, L. L. Dennett, and L. L. Cory, for Appellants.

Frank Kauke, and Ernest Klette, for Respondents.

MELVIN, J.—The brothers and sisters of Wallace E. Loucks, deceased, prosecute an appeal from a decree of distribution whereby the entire estate of said Wallace E. Loucks was given to the estate of his deceased child Thelma G. Loucks for the benefit of her heirs at law, her maternal grandparents. There is also an appeal from the order denying the motion of said brothers and sisters of Wallace E. Loucks for a new trial.

Wallace E. Loucks, his wife Elsie May Loucks, and their infant daughter Thelma G. Loucks were killed in a collision between a railway train and the automobile in which they were passengers. The instantaneous death of Mrs. Loucks is unquestioned. The principal controversy, therefore, is upon the question whether or not Wallace E. Loucks survived his daughter, who was his only child. If he did outlive her, these appeals should be successful; if Thelma G. Loucks survived her father, the decree and order from which appeals are taken, should be affirmed. The question of fact was tried by the court, a jury having been waived by all interested parties, and the court found that Wallace E. Loucks died leaving his daughter Thelma as his only heir at law.

The appellants contend that from the evidence received in the trial of the issues of fact it was impossible to determine with any satisfactory degree of accuracy whether the father or the child died first, and that, therefore, the presumption of our statute (Code Civ. Proc., sec. 1963, subd. 40) should prevail in their favor. That subdivision is as follows: "When two persons perish in the same calamity, such as a wreck, a battle, or a conflagration, and it is not shown who died first, and there are no particular circumstances from which it can be inferred, survivorship is presumed from the probabilities resulting from the strength, age, and sex, according to the following rules . . . Fifth. If one be under fifteen, or over sixty, and the other between those ages, the latter is presumed to have survived."

Appellants also assert that the burden of proving the survival of the child beyond the life of her father was upon respondents, and that the evidence is so unsatisfactory as to

compel the conclusion that they failed to meet the obligation of this rule. Appellants advance the argument that the respondents having failed to establish by a preponderance of evidence the death of Mr. Loucks prior to that of his daughter, even if no resort be had to our statute of presumptions, the decision should have been made in accordance with the rule of the common law whereby the courts refused to determine who of two persons so related, killed by the same calamity, survived the other, but distributed the estates as if the deaths occurred at the same instant. (*Joseph* v. *Seward,* 91 Ala. 597, [8 South. 682]; *Taylor* v. *Diploch,* 2 Phillim. Eccl. Rep. 261; *Mason* v. *Mason,* 1 Meriv. 308; *Underwood* v. *King,* 19 Beav. 459, and on review 4 De G. M. & G. 633; *Wing* v. *Angrave,* 8 H. L. Cas. 183; *Coye* v. *Leach,,* 8 Met. 371, [41 Am. Dec. 518]; *Newell* v. *Nichols,* 12 Hun, 604, 75 N. Y. 78, [31 Am. Rep. 424].) That this requirement of proof of survival by a, preponderance of evidence was the rule at common law is not seriously doubted by respondents, although they deny its application under our probate system. We think that the fact of survivorship must be established by a preponderance of evidence, not because the heirs of one decedent or of another begin a contest, but because it is the duty of the court to determine the matter of heirship and survival. This duty would still exist whether any one instituted any proceeding or not. Nor do we doubt that if preponderating evidence were wanting to satisfy the court regarding this matter, the statute of presumptions would then be applicable to the solution of the problem to be determined; but the provisions of subdivision 40 of section 1963 of the Code of Civil Procedure are only applicable when it is not shown "who died first and there are no particular circumstances from which it can be inferred." This is only another way of saying that the above presumption is to be applied only where the relative times of the death of persons perishing by the same disaster cannot be shown by direct or circumstantial evidence or both. (*Grand Lodge A. O. U. W.* v. *Miller,* 8 Cal. App. 28, [96 Pac. 22].) In the case at bar there was a conflict of evidence and the court, after hearing all of the testimony, found the essential fact to be that the child Thelma survived her father. We do not see that this differs from the ordinary case wherein conflicting testimony has been given, and unless we find, upon a study of the record, that in

no rational view of the evidence was the court below justified in the conclusion reached, we must sustain the findings of that court.

The accident occurred a short distance from the town of Reedley in Fresno County, and the hour, according to the testimony of the train conductor, was 10:45 A. M. After striking the automobile the train proceeded but a short distance and then backed to the scene of the accident. Mr. Loucks was still in the automobile. His head had been so crushed that the bones of one side of the skull were comminuted, and there was a hole in the side of his head. The baby lay on the ground. There was only a red spot on the top of her head and, according to the testimony of at least one witness, there appeared to be no fracture of her skull. Different witnesses testified to the signs of life in Mr. Loucks and the baby when the train backed to the scene of the disaster. Of the child, one witness, Mr. Chambers, said: "I saw the baby wriggling on the ground. It seemed to be very active, wriggling back and forth. I went up pretty close to it. It was breathing, but not whining, crying or anything—no noise. Someone came along with a buggy and we decided to load it in the buggy. They thought probably they would save the life, thought it would be quicker to take it in the buggy than to delay for the train." The same witness said with reference to Mr. Loucks: "Mr. Loucks was sitting on the floor of the automobile with his hands over the dash board. His body was wedged in. On the side of his head he had an injury. It was a kind of blood clot or something like that, a lot of blood coming out, kind of pouring out. I didn't notice any brains or anything of that kind, but it just bled a big clot of blood on the side of his head. He coughed up something, I don't know what it was. . . . Q. Well, what did you see with reference to any movements, muscular or otherwise, about him? A. Well, he gasped, simply—that is my idea of it, simply gasped and that was all there was about it; I concluded at that time that he was dead. I didn't know that he was.

"Q. Anything afterwards at any time to make you change your mind? A. No. . . . This final gasp seemed to me like a contraction of the muscles more than anything else. Just simply that ended it. After he was put in the baggage car I saw him there. I saw nothing further that indicated

life.  As near as I can determine it the time from the time of
the accident to the time the train started back to Reedley was
about 15 minutes."

Mr. Chambers also said: "To the best of my recollection
they were getting Mrs. Loucks in the car when they started
off with the baby.  It seems it all came around together.  My
recollection is she was practically in the car when they started
to take the baby.  Taking into consideration everything, I
should think the train and buggy would get back to Reedly
about the same time.  Ordinarily the train would back a little
faster."  Mr. Golden, the baggageman, noticed a muscular re-
laxation just as Mr. Loucks was placed upon the stretcher be-
fore the body was lifted into the baggage car, but saw no move-
ment afterwards.  With reference to this matter he said: "Re-
laxation of the muscles is what I supposed I saw.  I saw no
other indications of life after that."  No witness testified to any
movement or other indication of life in Mr. Loucks after the
train started for Reedley.  Mr. Andrews testified that the
baby Thelma was alive when he started with her in his buggy
for Reedley, but she was apparently dead when he reached
the hotel in town.  She was breathing, however, when he ar-
rived at a point one block from the hotel.  If, as Golden tes-
tified, the train and the buggy reached Reedly about the same
time, then the court was justified in concluding that Mr.
Loucks expired first, because he last showed signs of life before
the train started back to the town from the scene of the acci-
dent, while the child was alive after the buggy was in Reedley.
It is true that the opposite theory may be sustained upon other
portions of the evidence, and particularly by taking the esti-
mates of the passage of time given by different witnesses.  Mr.
Andrews said he drove to town in four minutes after the baby
was placed in his care.  The conductor estimated that this was
two or three minutes after the train returned to the place where
the bodies were lying.  The same witness stated that probably
ten minutes elapsed between the time the train struck the
automobile and the time the bodies of Mr. and Mrs. Loucks
were lifted into the baggage car, and counsel for appellants
argue that, therefore, the father survived the child by three
minutes.  This computation fails to take into consideration
the time consumed by backing the train; but aside from that,
conclusions based upon mere estimates of time are very rarely

satisfactory. There are few things about which witnesses differ so greatly as questions of time. There was testimony tending to corroborate Golden's statement that the train and the buggy must have reached Reedley at about the same time. Mr. Andrews, after delivering the body of Thelma Loucks to Miss Works at the hotel in Reedley, hurried back in an automobile to the scene of the accident and found that the train had gone. He said the train must have been at or at least near the station before he started from Reedley in the automobile; otherwise he would have seen it as it backed toward the town.

Although the conclusion that Mr. Loucks survived his daughter might be deducible from certain selected portions of the testimony, there was also abundant evidence to justify the finding that Thelma outlived her father. The learned judge who tried the case, experienced as he is in weighing evidence, was satisfied upon this point. We cannot disturb his analysis of the conflicting evidence which he actually heard. If he had found it impossible to reach a satisfactory result from the evidence offered, doubtless he would have thrown the weight of the statutory presumption into the balance; but this he evidently found unnecessary.

On the motion for a new trial appellants introduced certain affidavits reciting alleged newly discovered evidence to be offered for the purpose of showing the time that elapsed between the departure of Mr. Andrews with the baby and the placing of Mr. Loucks in the baggage car. This offered evidence was cumulative. Indeed, two of the affiants were witnesses at the trial and testified fully with reference to the time consumed by the various occurrences immediately after the accident. The affidavits of Doctors Pendergrass and Williams, who examined the body of Mr. Loucks upon its being exhumed after the hearing, were to the effect that the neck and jaw were not broken, and that death resulted from injuries to the head. While this testimony would have a tendency to contradict the opinions of certain witnesses, we do not see that it would detract from the conclusion that death must have resulted very soon after the injuries to the head of Mr. Loucks.

Upon the cross-examination of Ed Dice, he was confronted with an affidavit in which he had deposed that five minutes elapsed between the placing of the baby in the buggy and the deposit of Mr. Loucks's body in the car. At the trial he

said this period was, he thought, less than five minutes. Counsel asked this question: "Well, now, can you reconcile the two statements?" A general objection to the question was sustained, and this is assigned as error. The question was argumentative, and the objection to it was properly sustained. The two statements were clearly not reconcilable, and the question was doubtless asked for the purpose of involving the witness in an argument. "The question did not call for a fact, but for an argument in answer to the argument contained in the question." (*People* v. *Harlan*, 133 Cal. 21, [65 Pac. 11].) This question was propounded to Dr. Steinwand: "Just describe, not necessarily in doctor's terms, but so we will understand them, what the extent of the injuries were." Objection was made on the ground that it was not shown that the head was in the same condition when the doctor examined it as it was immediately after the injuries were received. There was no force in this objection. True, the evidence showed some manipulation of the broken bones by the undertakers, but there was nothing to show any material change which could have been wrought by such mere handling of the head. The same may be said of a like objection made to a question regarding the immediate effect of such an injury. It was without merit. To the question propounded to witness Burgan: "Did it appear to you that the man was alive when he was placed in the car," a general objection was sustained. The witness was not an expert. The ruling was proper, and the court suggested to counsel the correct method to be pursued, the judge saying: "The court did not rule that you cannot show those facts. It is simply to the form of the question— simply because it asks for an opinion on a matter he don't seem competent on." Thereafter the witness was permitted to state what he noticed at the time Mr. Loucks was placed in the car which would cause him to believe that life was not extinct. The objection to the question, "Well, do you know why he was placed on the stretcher and she was not placed on the stretcher?" was properly sustained. The only purpose of such a question would be to elicit a statement from the witness that those placing the body on the stretcher believed Mr. Loucks was alive. Their belief was not pertinent, but only a statement of the physical facts supporting such belief was admissible in evidence.

A motion was made to strike out certain testimony of Dr. Booker. As the doctor testified without objection there was no basis for such motion. (*People* v. *Samario,* 84 Cal. 485, [24 Pac. 283] ; *Evans* v. *Johnston,* 115 Cal. 183, [42 Pac. 906].)

From the foregoing it follows that the decree and order from which appeals are taken should be affirmed, and it is so ordered.

Lorigan, J., and Henshaw, J., concurred.

Hearing in Bank denied.