**S. D. HAHN, as Administrator of Estate of Young D. Hahn, Deceased, Appellant,**

v.

**Sarah E. PADRE, as Administratrix of the Estate of Herbert Huxley Hahn, Deceased, Appellee.**

**No. 14609.**

United States Court of Appeals Ninth Circuit.

July 2, 1956.

Edward Carter Maddox, Miller, Maddox & Sheats, Los Angeles, Cal., for appellant.

Templeton & Miller, Los Angeles, Cal., for appellee.

Before FEE and CHAMBERS, Circuit Judges, and WALSH, District Judge.

CHAMBERS, Circuit Judge.

Dr. Young D. Hahn and his twelve year old son, Herbert Hahn, died during the night of April 18–19, 1953, as a result of a collision on a public highway between Tia Juana and Mexicali in Baja (Lower) California in the Republic of Mexico. Hereafter, we shall refer to them as Doctor Hahn and Junior. Both were residents of Los Angeles. The two were passengers in the doctor's car which was driven by a woman named Ella Moyo Dioz who apparently survived, but was obviously injured so badly that she could give no evidence as to the sequence of the deaths of father and son.[1]

Junior Hahn was the insured under four policies of life insurance issued by the Prudential Insurance Company of America, each in the principal amount of $1,000. Doctor Hahn was the sole beneficiary named in the policies. After the two deaths, S. D. Hahn, the appellant, was appointed as the administrator of the doctor's estate. Sarah E. Padre, mother of Junior Hahn, was appointed as administrator of his estate. Both administrators made separate demands for the proceeds of the insurance on the life of Junior. Each asserted that his intestate died last. Without for the moment discussing the niceties of the claims of the parties as to the instants of the respective deaths, it could be said that both were apparently dead when they reached the hospital in Mexicali or the adjoining morgue which was a department of the hospital.

Confronted with the two claims, Prudential deposited the total proceeds, which were slightly in excess of four thousand dollars, with the district court, filing an interpleader suit demanding that the administrators litigate the issues between themselves. Necessary diversity of citizenship was present and, in due course, judgment was entered discharg-

ing Prudential and requiring the parties to assert their claims. This they did with mutual cross-complaints.

Eventually on August 30, 1954, the trial court entered findings of fact and conclusions of law upon which judgment followed. It ruled that Doctor Hahn died first and Junior Hahn last. Therefore, it held that Junior's administrator, appellee here, was entitled to the money on deposit. It so ordered.

Here on appeal, the doctor's administrator has two grounds. First, he asserts that he was chevied around by one continuance of the trial after it started and by a later reopening of the case (before judgment, but after submission and oral announcement of decision), all beyond any proper limits of judicial discretion. Second, he contends the findings are clearly erroneous.

A pre-trial conference was held. Counsel for Junior's administrator did not receive a promised formal ruling on the admission of certain documents in the advance of trial, although on the eve of trial he seems to have had some premonition of the adverse ruling, the premonition being induced by the clerk of the court. On the day of the first trial installment, February 8, 1954, the doctor's administrator produced two witnesses, Mexican police officers, who testified. Junior's administrator had none. The trial on the court's motion over the now appellant's strong objection, was continued to March 1, 1954.[2] At this point, the trial judge indicated to counsel that he was not yet convinced that he could find as a matter of fact that either died first. (Later on, we shall reach the legal significance of the question of who died first.) Had the trial stopped there and the judge's tentative conclusion been carried into findings and judgment, we are inclined to think he might have been clearly erroneous. The two witnesses of the doctor's administrator were quite

---

1. Mrs. Dioz drove the doctor's car into a paving machine on the highway. There is some indication that at the time of collision the three were either going or returning from fishing.

2. The trial, under the order of continuance, was actually resumed March 15, 1954.

definite that the doctor breathed at least a few minutes longer than Junior.

■ We shall not detail the full circumstances of the trial continuance. Both parties indicate that the matter is one of sound judicial discretion, but appellant claims the continuance here exceeded any decent discretion. Appellant cites a number of cases where on appeal continuances were held to be beyond proper limits. But we are not convinced that the facts here show an abuse of discretion. The record clearly shows that the trial judge was motivated by a desire to get all relevant testimony before him and believed that his delay in informing counsel for Junior's administrator of his decision to exclude the documentary evidence, in fairness, entitled counsel to have an opportunity to get live witnesses.

At the conclusion of the trial on March 15, 1954, Junior's administrator had offered one pretty fair witness in person and two depositions. The case was looking up for his side. The case was submitted for decision. Forthwith, the trial judge stated his opinion orally and clearly. He thought that he had an abiding doubt based upon the testimony of all the witnesses as to which decedent died first. He thought the deaths did occur very, very close together, but beyond that he did not feel certain.[3] Of this mind, he directed counsel for the administrator of the doctor to prepare findings that the two Hahns died simultaneously.

But the trial did not end there. Before the findings could be prepared and approved, counsel for Junior's administrator had another witness which he had just found, and he hadn't been able to find before. He had fair excuses. So the court granted a motion to reopen. The testimony of the new witness was taken upon deposition and the third installment of the trial was held on August 16, 1954. At the conclusion of the third installment the court was satisfied that when the testimony of the new witness, although by deposition, was added to that

already in the record that Junior Hahn survived the doctor. This time findings were ordered prepared to that effect. Judgment for Junior's administrator went accordingly.

One must concede that the district court had a close question as to whether the case should be reopened, whether Junior's administrator had used due diligence. Of course, bringing causes to an early end has much merit and should be heavily weighted into any consideration of reopening. At the time the motion was granted, the court was dissatisfied; it couldn't tell who died first and wanted to get any evidence available. We think the particular circumstances of the reopening come just within the outer periphery of discretion, but we do not believe it was error. We are inclined to think we would have done the same thing.

■ If it was proper to hold the trial, as it was held in three installments, then we think the trial court's remaining problem was mainly a fact question. Part of the testimony was oral, part was documentary and on deposition. But when there is much oral testimony, and of a contradictory character, we are not free to weigh it and we do not know just how the oral testimony intertwines into the mixture which results when combined with the documents and the depositions. We cannot say the trial court's ultimate conclusion on the facts was clearly erroneous.

Our discussion of the testimony has been very cryptic. For this, we have a reason. California, with modifications to suit local property laws, in 1945, adopted the Uniform Simultaneous Death Act. Sections 1 and 4 of the act appear in the California Probate Code in the following form:

"§ 296. Disposition of property; insufficient evidence of survivorship

"Where the title to property or the devolution thereof depends upon pri-

3. Orally the trial judge said, "I will make a finding of fact that it is one of those accidents in which both were killed si-multaneously. It is difficult to determine which one breathed the last."

ority of death and there is no sufficient evidence that the persons have died otherwise than simultaneously, the property of each person shall be disposed of as if he had survived, except as provided otherwise in this chapter.

\* \* \* \* \* \*

"§ 296.3 \* \* \* Where the insured and the beneficiary in a policy of life or accident insurance have died and there is no sufficient evidence that they have died otherwise than simultaneously the proceeds of the policy shall be distributed as if the insured had survived the beneficiary."

█ We would think that § 296.3, in the case of the Hahns, would govern to the complete exclusion of § 296.[4] It is perfectly clear at the conclusion of the second trial installment on March 15, that the district judge ruled "there is no sufficient evidence (to convince him) that the persons have died other than simultaneously." On the reopening and the receipt of more evidence on August 16 he found sufficient evidence to hold that the insured, Junior Hahn, survived the beneficiary, Doctor Hahn. That is a different finding of fact, but § 296.3 attached to the prior orally announced findings of fact exactly the same legal consequence.[5]

█ Suppose this court should think that it was clearly erroneous to find as a matter of fact that Junior died last and was of the clear opinion that the finding must be that there was not sufficient evidence to find that the persons deceased died other than simultaneously, we should not send the case back for the court to find something (as a matter of fact) that would carry us on around again to the same final legal destination. We are not constituted to order the performance of utterly useless acts.

Assuming the final findings as made by the fact finder are permissible, no one has suggested that there is any error in awarding the disputed funds to Junior Hahn's administrator. If such an award to Junior Hahn's estate on such findings is proper, it must follow if the findings are "there is no sufficient evidence that the persons died other than simultaneously" (where the statute provides "the proceeds of the policy shall be distributed as if the insured had survived the beneficiary"), that the proceeds also go to the administrator of the insured Junior Hahn.

We are puzzled by the apparent satisfaction of the doctor's administrator during the trial with a finding of simultaneous death and by the objection of Junior's administrator to such a finding. Indeed, the appellant's brief concludes with the request for a new trial (which we are not disposed to grant) or an order by us directing "revising the finding to that of simultaneous death." Whether or not the explanation lies in California law as it existed before the adoption in 1945 of the Uniform Simultaneous Death Act, we do not know.

It might be said that if this court were the fact finder now and we had to do it on the printed record alone, we would probably come up with the conclusion that the testimony in printed form gives no abiding conviction as to which died first. But the district judge saw and heard four live witnesses. Into their stories he integrated four depositions. His conclusion is plausible that Junior Hahn died last, just as a finding that Doctor Hahn died last or a finding that there is not sufficient evidence to tell who died first (therefore, simultaneous death) could be.

This is not a case for us to disturb.

Affirmed.

---

**4.** The principal case involving Section 4 of the Uniform Simultaneous Death Act is In re Wedemeyer's Estate, 109 Cal. App.2d 67, 240 P.2d 8. See note on the case, 25 University of Southern California Law Review 466. The case is not particularly apposite here because there seem to be no community property problems presented in the Hahn case.

**5.** In re Cruson's Estate, 189 Or. 537, 221 P.2d 892, 20 A.L.R.2d 219.