257 Cal.App.2d 324 (1967)
Estate of ANNA MAY ROWLEY, Deceased. JESSIE NORTON et al., Claimants and Appellants,
v.
MARY LU BUNNELL, as Executrix, etc., Claimant and Respondent.
Civ. No. 24328. 
California Court of Appeals. First Dist., Div. One. 
Dec. 22, 1967.
 Young, Wooldridge, Paulden & Self, William L. Caraway and Joseph Wooldridge for Claimants and Appellants.
 Johnson, Harmon & Johnson and Robert H. Johnson for Claimant and Respondent.
 SIMS, J.
 Following an automobile collision, the lifeless bodies of Anna May Rowley and Eulah May Cooper were found in the vehicle in which they had been traveling. The *327 executrix of Mrs. Rowley's will filed a petition, pursuant to the provisions of section 296.41 of the Probate Code, seeking to have it determined that they died under circumstances where there was no sufficient evidence that they died otherwise than simultaneously. Respondent Mary Lu Bunnell, as executrix of the estate of Miss Cooper, to whom Mrs. Rowley had bequeathed $15,000 and her automobile, filed an answer in which she alleged that Miss Cooper survived Mrs. Rowley. Appellants Jessie Norton and Minnie Svolanek, the residuary legatees of Mrs. Rowley's estate, filed their answer alleging that the two women died simultaneously and that there was no sufficient evidence to the contrary. The petitioner disclaimed any interest in the outcome of the issue raised by the answers and was excused from further participation. Following trial the court rendered its written decision that there was sufficient evidence that Mrs. Rowley's death preceded Miss Cooper's "by an interval of time" and that Miss Cooper survived her benefactress. Findings of fact and conclusions of law, and an order (Prob. Code, 296.42) determining that Miss Cooper survived and that her estate was entitled to the property bequeathed to her were accordingly prepared, signed and entered.
 The residuary legatees have appealed from the decision as well as from the decree. [fn. 1] They contend that the evidence is insufficient to establish that Miss Cooper survived Mrs. Rowley, or, in the words of the statute, "there is no sufficient evidence that they died otherwise than simultaneously." In support of this contention they urged that the inferences upon which respondent and the trial court relied can only be supported by conjecture, surmise and guesswork, and that it was error to receive the opinion of a medical doctor regarding principles of physics and dynamics. [1a] An examination of the record fails to demonstrate as a matter of law that the trial court was without evidentiary support for its conclusion *328 that respondent had established, by a preponderance of the evidence, that it was reasonably probable that Mrs. Rowley died first. The order must be affirmed.
 The Facts
 On November 16, 1965, at approximately 1:30 p.m., Eulah May Cooper, companion to Anna May Rowley, was driving Mrs. Rowley's late model Cadillac north on Highway 101 in San Benito County. Mrs. Rowley, who could not drive, was sitting in the right front seat. The accident occurred on that part of the four lane divided road upon which the northbound lanes curve easterly, or to the right, in a broad sweeping curve. There was a moderate amount of rain at the time of the accident. The investigating officer testified that the broken speedometer of the Cadillac indicated Miss Cooper was driving at 75 miles per hour. [fn. 2] In his opinion, the Cadillac did not go straight across the divider into the southbound lanes, but went out of control a little bit back in the curve, then went into a broadside skid and entered the southbound lanes going northerly at about a 90-degree angle to the lanes. He felt that the absence of skid marks was due to the fact that the car hydroplaned on the water on the pavement.
 The right side of the skidding Cadillac collided with the front of a Falcon, which was being driven southerly at about 70 miles per hour, in basically a straight-on broadside accident. Gouge marks on the pavement indicated that some portions of the involved cars moved northwesterly 21 to 25 feet from a point 2 feet inside the easterly edge of the southbound lanes, to a point 1 foot easterly of the lines dividing the two southbound lanes. The impact was such that the Falcon, which was pushed backward, was approximately a "third of the way inside the Cadillac" when the cars came to rest.
 A highway patrolman arrived at the scene some two minutes after the accident. Several persons had gathered prior to his arrival, but there is no evidence they witnessed the collision. Neither of the victims ever showed the slightest sign of life.
 Mrs. Rowley was crushed between the right front door, which had been pushed in by the Falcon, and the dashboard of the Cadillac. Before her body could be removed from the *329 car, the Falcon had to be pulled away by a tow truck, and the Cadillac's door had to be pried off by a wrecker. Her body was found crushed, and with the torso twisted so that the visible upper portion was facing the rear of the car. A dog, which was apparently either on her lap or close to her, was crushed to the point that its remains could not readily be distinguished from hers. The ambulance owner testified that it was his impression that "all that was holding her together was her clothes. We had to handle her very carefully." The deputy coroner of San Benito County, a physician, concurred in this judgment, indicating that her "body ... was just torn up to the point where there is nothing but skin holding her together, disemboweled, chest torn open." It was impossible for him to even test for rigor mortis because of the condition of the body. The highway patrolman testified that it was his opinion that Mrs. Rowley was dead when he first saw her.
 The deputy coroner who performed the actual post-mortem examination was of the opinion that Mrs. Rowley died instantly and could not have taken a single breath or moved a muscle. The coroner, a physician, and a third physician with a background of handling accident cases, called as an expert medical witness by respondent, also concluded that she died instantly. Appellants' medical witness testified that on the basis of the injuries reported in the death certificate and post-mortem record, Mrs. Rowley possibly could have lived for a brief interval after suffering the reported injuries, but on cross-examination he acknowledged that he thought that when she received the injuries she had died instantly.
 Eulah May Cooper was found behind the steering wheel, leaning back, with her head to her left, against the supporting doorpost between the front and back seats. The back of her head was fractured with brain tissue protruding, her ribs were broken, indicating possible sideways crushing of her chest, and her right arm and leg were broken.
 Although the highway patrolman, as previously stated, was of the opinion Mrs. Rowley was dead when he first observed her, he did not know whether Miss Cooper was dead. There was no problem in removing Miss Cooper's body from the automobile in contrast to the problems in removing Mrs. Rowley's body, and Miss Cooper was removed first. The deputy coroner was unable to determine, as he had with Mrs. Rowley, that Miss Cooper died instantly. The coroner stated that she could have possibly taken a breath or two but that life could *330 not have been sustained very long in her body. He subsequently acknowledged that he arrived at the conclusion Miss Cooper died at the second the blow struck her. The respondent's expert testified it was medically possible that Miss Cooper could utter a sound or take a breath after impact, but he, too, observed that it was logical to say that the enormous force transmitted to her was sufficient to cause immediate death when it hit her. Appellants' medical witness testified that the injuries suffered by Miss Cooper would cause her to die instantly when the blow was received. [fn. 3]
 An analysis of the entire testimony of each physician reveals a unanimity of opinion that each victim died immediately upon receiving the injuries disclosed by the post-mortem reports. Inquiry concerning the sequence of death produced the following opinions:
 The deputy coroner, who performed the autopsy, testified that it would be a matter of "conjection [sic]" as to the exact instant when death occurred as between the death of Miss Cooper and Mrs. Rowley.
 The coroner, when limited to a medical opinion, stated that on the basis of the relative injuries, "the destruction of Mrs. Rowley's body would indicate possibly she expired first." He acknowledged that the death certificates he signed each gave the hour of death as "about 1:30 p.m.," and that a column in the death certificates reading "Approximate interval between onset [of cause of death] and death" had been left blank in each instance. He also acknowledged that on December 12, 1965 he wrote appellants' attorney, "The impact was so great that the women were literally torn to pieces. Their extremities and brains were scattered about the interior of the car. Death to both of them was without a shadow of doubt, absolutely instantaneous." The coroner complained to the court, that he had used his knowledge of physics and was not being permitted to testify on the point. He was subsequently recalled to the stand to explain a letter he had written to one of the attorneys for respondent dated January 17, 1966. In the letter he had stated: "With regard to determining which of the women died first, the report of the Highway Patrol would show you the manner in which the cars collided and further *331 details. Miss Cooper's Cadillac skidded across three lanes and the center strip with the right side of the car sliding forward. It was struck amidships on the right by the oncoming Falcon. You can see from this that the Falcon hit the door immediately inside of which Mrs. Rowley was sitting. This, then would make it seem that Mrs. Rowley died first. The almost unrecognizable condition of the bodies would make one know that both women died instantly--with the possibility that Mrs. Rowley's death occurred a small fraction of a second before Miss Cooper. ..."
 "[An attorney] suggested that Miss Cooper may have died of a heart attack. This, I think is stretching your imagination a little far, but Mrs. Rowley did die first, by about one hundred and fifty thousandth of a second." He testified that the 1/150,000 of a second was computed as follows: "I took the highway patrolman's report of the speed of the Cadillac and the speed of the Falcon coming together, and made a rough guess at how much longer time it took the Falcon to push Mrs. Rowley over and kill Mrs. [sic] Cooper. That would be a rough mathematical guess." He claimed knowledge of physics because he had taken three years of college physics, including mechanical and electrical physics. He acknowledged that he had not worked out a formula for determining the time of death, and that the 1/150,000 of a second would be just a guess he made. His testimony may be epitomized in the statement, "The trauma to the body was so great that the minute each one was hit I am quite sure they died, but one of them was hit before the other one was." He predicated his conclusion that Mrs. Rowley was struck first, on his examination of the car and the report and drawings of the highway patrolman.
 Respondent's expert medical witness testified on the basis of the evidence concerning the circumstances of the collision, and the post-mortem reports. He stated that since practically all of Miss Cooper's injuries were on her right side, and were consistent with the known application of force from that direction, that the injuries to her skull should be attributed to the same force. He concluded: "The cause [that killed Miss Cooper] ... was this enormous force transmitted to her, and I think we can logically say that that was sufficient to cause immediate death when that force hit her. And the force came from her right side and the force of the wreck came from the right side. So in regard to the element of time, it took a certain amount of time for the force of the car hitting their *332 car, doing damage to her passenger, being transmitted to her. So they would both die when the force hits them, but it is very evident that the same force didn't hit them at exactly the same time. It couldn't be. So even if they both died when the force hit them, there would be a period of time between when her passenger died and she died. ..." He acknowledged that death was instantaneous to each of the victims upon the force striking them, but insisted, "the force striking them was different, was at different times. So it hit number one and instantly she died. Then it went to the next one and did so much damage that instantly she died. So one died after the other."
 On cross-examination this doctor claimed experience in physics in the field of sound, but acknowledged that he had not done anything in the field of dynamics for years. He asserted that the question of how long it took a force to pass from the passenger to the driver next was highly theoretical, but that force would not travel without time, and that the more rigid the substance, the faster the force travels through it.
 Appellants' expert initially testified that he thought Miss Cooper died first because of the nature of the instantly fatal injury to her skull as compared to the injuries suffered by Mrs. Rowley. He subsequently acknowledged that even though the injuries to Miss Cooper's skull were more vital to life than those to the skull of Mrs. Rowley, the latter's total injuries were such that he thought she, as well as Miss Cooper, died instantly upon receiving the injuries. In this connection, he stated, "I think they both died at the same time; my golly, look at the automobile!" He further postulated that he did not think anybody could say who died first or when either of them, in point of time, received the damaging blows.
 Discussion
 These proceedings involve the Uniform Simultaneous Death Act (Prob. Code, 296-296.8), and particularly section 296 which provides: "Where the title to property or the devolution thereof depends upon priority of death and there is no sufficient evidence that the persons have died otherwise than simultaneously, the property of each person shall be disposed of as if he had survived, except as provided otherwise in this chapter."
 [2] "The purpose of the Uniform Simultaneous Death Act is to supplant the former arbitrary and complicated presumptions *333 of survivorship with effective, workable, and equitable rules applicable to the ever-increasing number of cases where two or more persons have died under such circumstances that there is no sufficient evidence to indicate that they have died otherwise than simultaneously." (Azvedo v. Benevolent Soc. of Cal. (1954) 125 Cal.App.2d Supp. 894, 901 [270 P.2d 948]; accord; Estate of Meade (1964) 228 Cal.App.2d 169, 172-173 [39 Cal.Rptr. 278].)
 [3] "The cases cited ["20 A.L.R.2d 235, and Uniform Laws Annotated, vol. 9A, p. 265, and the 1953 Cumulative Annual Pocket Part thereof"] also hold with remarkable uniformity that if there is any sufficient evidence that either party survived the other, even when the deaths occur at substantially the same time, the statute is inapplicable and the question of survivorship must be determined as any other fact. No case has been found indicating that mere difficulty in determining which one survived justifies the court in abandoning the task and seeking shelter under the protecting arms of the simultaneous death statute. In Sauers v. Stoltz (supra), [(1950) 121 Colo. 456 [218 P.2d 741]] the trial court was reversed because it attempted to do so." (Id., at p. 900; and see Estate of Loucks (1911) 160 Cal. 551, 554 [117 P. 673, Ann.Cas. 1913A 868]; Thomas v. Anderson (1950) 96 Cal.App.2d 371, 375-376 [215 P.2d 478]; Clarke v. Bryson (1934) 136 Cal.App. 521, 523 [29 P.2d 275]; Estate of Wallace (1923) 64 Cal.App. 107-110 [220 P. 682]; and United Trust Co. v. Pyke (1967) 199 Kan. 1, 8 [427 P.2d 67, 73].)
 The contention that deaths are simultaneous under the provision of the uniform act, if they occur substantially or approximately at the same time, has been rejected by the courts of this state. (Thomas v. Anderson, supra, 96 Cal.App.2d 371, 375-376; Azvedo v. Benevolent Soc. of Cal., supra, 125 Cal.App.2d Supp. 894, 899.)
 [4] Respondent concedes that as the party whose claim is dependent on survivorship, she had the burden of proving that fact by a preponderance of the evidence. It is uniformly so held (see cases collected Annotation (1951) 20 A.L.R.2d 235, 239; Belt v. Baser (1964) 238 Ark. 644, 647 [383 S.W.2d 657, 658]; Prudential Ins. Co. v. Sutton (Mo.App. 1963) 368 S.W.2d 522, 524; In re Spatafora's Estate (1962) 35 Misc.2d 128, 129 [229 N.Y.S.2d 601-602]; Schmitt v. Pierce (Mo. 1961) 344 S.W.2d 120, 123; Prudential Ins. Co. v. Somers (1957) 20 Conn.Supp. 351, 354-355 [135 A.2d 365, 367]; In re Cruson (1950) 189 Ore. 537, 561-562 [221 P.2d 892, 20 *334 A.L.R.2d 219, 232-233]; In re Di Bella's Estate (Surrogate's Court 1950) 199 Misc. 847, 851 [100 N.Y.S.2d 763, 765], affd. (1951) 278 App.Div. 689 [107 N.Y.S.2d 929]; and In re Dukszta's Estate (Surrogate's Court 1948) 193 Misc. 720, 722 [87 N.Y.S.2d 245, 246], revd. on other grounds (1949) 275 App.Div. 915, 1035 [90 N.Y.S.2d 686 and 92 N.Y.S.2d 310]). In this state precedents so holding under prior law have been followed under the provisions of the uniform act. (Thomas v. Anderson, supra, 96 Cal.App.2d 371, 375, applying Estate of Loucks, supra, 160 Cal. 551, 554.)
 [5] Survivorship may be established by direct or circumstantial evidence. (Estate of Loucks, supra, 160 Cal. 551, 554; Clarke v. Bryson, supra, 136 Cal.App. 521, 523; United Trust Co. v. Pyke, supra, 199 Kan. 1, 7 [427 P.2d 67, 72- 73]; but cf. Estate of Wallace, supra, 64 Cal.App. 107, 110-111 and 117; and In re Cruson, supra, 189 Ore. 537, 566-567 [20 A.L.R.2d 219, 235].) [fn. 4] Survivorship is a question of fact to be determined by the trial court, and where it is supported by substantial evidence, a finding of survivorship must be sustained on appeal. (Estate of Loucks, supra, 160 Cal. 551, 554-555; Thomas v. Anderson, supra, 96 Cal.App.2d 371, 375; Clarke v. Bryson, supra, 136 Cal.App. 521, 523; United Trust Co. v. Pyke, supra, 199 Kan. 1, 7 [427 P.2d 67, 72]; In re Davenport's Estates (1958) 79 Idaho 548, 552 [323 P.2d 611, 613]; Schmitt v. Pierce, supra, 344 S.W.2d 120, 123-124; and see cases reviewed at pp. 132-133; Prudential Ins. Co. v. Sutton (Mo.App. 1963) 368 S.W.2d 522, 527; Hahn v. Padre (9th Cir. 1956) 235 F.2d 356, 358; and cf. Azvedo v. Benevolent Soc. of Cal., supra, 125 Cal.App.2d Supp. 894, 900; and Sauers v. Stolz (1950) 121 Colo. 456, 458 [218 P.2d 741, 742], with Estate of Wallace, supra, 64 Cal.App. 107, 116 and In re Cruson, supra, 189 Ore. 537, 566-567 [20 A.L.R.2d 219, 235].)
 [1b] Respondent asserts that she has sustained her burden of proof, and that the judgment must be affirmed as supported by substantial evidence, despite the fact that contrary inferences could be drawn from the physical facts, and despite the conflict in the opinion of the medical experts with respect to the sequence of the deaths of the two victims. [6] She relies upon the following principle: "The plaintiff relying on circumstantial evidence does not have to preclude the possibility of all other possible inferences. He simply has to establish *335 the reasonableness of his inference by a preponderance of the evidence." (Vaccarezza v. Sanguinetti (1945) 71 Cal.App.2d 687, 692 [163 P.2d 470]; accord: Thomsen v. Rexall Drug & Chemical Co. (1965) 235 Cal.App.2d 775, 783-789 [45 Cal.Rptr. 642]; Spolter v. Four-Wheel Brake Service Co. (1950) 99 Cal.App.2d 690, 693-694 [222 P.2d 307]; Katenkamp v. Union Realty Co. (1940) 36 Cal.App.2d 602, 617 [98 P.2d 239]; Hilson v. Pacific Gas & Elec. Co. (1933) 131 Cal.App. 427, 431 [21 P.2d 662]; and Lejeune v. General Petroleum Corp. (1932) 128 Cal.App. 404, 415-416 [18 P.2d 429]. See also, Estate of Loucks, supra, 160 Cal. 551, 554-555 and 557.)
 Appellants, with equal ardor, insist that the trial court's conclusion that Miss Cooper survived is predicated upon testimony which in itself is based on guess, surmise and conjecture; that her survivorship is a mere possibility not a probability; and that therefore there is no substantial evidence to satisfy the burden of proof which respondent acknowledgedly bore. (Estate of Wallace, supra, 64 Cal.App. 107, 110 and 115-116; In re Cruson, supra, 189 Ore. 537, 566-567 [20 A.L.R.2d 219, 235]; and see, Sweeney v. Pozarelli (1964) 228 Cal.App.2d 585, 591 [39 Cal.Rptr. 601]; Van Pelt v. Carte (1962) 209 Cal.App.2d 764, 769 [26 Cal.Rptr. 182]; Estate of Kuttler (1960) 185 Cal.App.2d 189, 205 [8 Cal.Rptr. 160]; Brocato v. Standard Oil Co. (1958) 164 Cal.App.2d 749, 758 [331 P.2d 111]; and Eramdjian v. Interstate Bakery Corp. (1957) 153 Cal.App.2d 590, 602-603 [315 P.2d 19].)
 In the vast majority of cases in which survivorship has been established there has been testimony concerning the existence or nonexistence of bodily functions in the decedents. For example, in Thomas v. Anderson, supra, 96 Cal.App.2d 371, there was evidence to show one decedent had no pulse beat, his body was discolored and cold, and the other, who was found to have survived, was warm, had good color and a slight pulse. With the exception of the gunshot cases (see Azvedo v. Benevolent Soc. of Cal., supra, 125 Cal.App.2d Supp. 894, 901; and United Trust Co. v. Pyke, supra, 199 Kan. 1, 7 [427 P.2d 67]), attempts to establish survivorship from extrinsic physical circumstances, generally have been rejected. (Estate of Wallace, supra, 64 Cal.App. 107, 115-116; In re Cruson, supra, 189 Ore. 537, 566-567 [20 A.L.R.2d 219, 235]; but cf. Robson v. Lyford (1917) 228 Mass. 318, 326-327 [117 N.E. 621, 623-624].)
 In re Cruson, supra, on which appellants rely is not controlling. *336 In that case the husband and wife were the victims of an unwitnessed automobile accident. Their dead bodies, bearing fractured skulls and other injuries, were found in different places in the stream into which their car had plunged. In the first place, because of the nature of the proceedings, the appellate court was analyzing the evidence and trying the case de novo. (189 Ore. at p. 542 [20 A.L.R.2d at p. 224].) Secondly, the court observed, "An insurmountable difficulty to the determination of survivorship is the fact that the record does not show the cause of death of either of these two people. It is true that each had a fractured skull and other injuries which the witnesses mentioned, but no one knows whether any of these injuries were, in fact, the cause of death of either of them. It may be that each had a broken back; likewise, it may be that either or both of them died from drowning. Much time was spent during the trial in efforts to prove how many of the doors were flung open by the force of the impact. Seemingly, the purpose was to show that one or more of the occupants may have fallen out of the doors. Death, unlike the car, has innumerable doors, and no one can know by what means death entered upon the scene." (In re Cruson, supra, 189 Ore. at pp. 566-567.)
 In Wallace, supra, the court in part relied upon an assumed principle stated as follows: "An inference cannot be said to be established by circumstantial evidence, either in a civil or a criminal case, unless the circumstances relied upon are of such a nature and so related to each other that it is the only inference which can fairly or reasonably be drawn from them. If other inferences may reasonably be drawn from the facts in evidence, the evidence does not support the inference sought to be deduced from it." (64 Cal.App. at p. 110.) The Supreme Court in denying a hearing ruled, "In denying a petition for transfer to this court we place our denial of the petition for transfer upon the ground stated by the district court of appeal, namely, that the question as to whether the mother or daughter died first is not ascertainable from the evidence and that the finding of the trial court that the daughter died first is not sustained by the evidence. We do not wish to be understood as approving the statement of the rule by the district court of appeal as to the method of weighing circumstantial evidence when applied to a reviewing court on appeal. The rule is stated and applied in the recent cases of Estate of Loucks, 160 Cal. 551, 554, 555 [117 P. 673, Ann. Cas. 1913A 868], People v. Tom Woo, 181 Cal. 315 [184 P. *337 389], and Mah See v. North American Acc. Ins. Co., 190 Cal. 421 [213 P. 42, 26 A.L.R. 123]." (64 Cal.App. at pp. 116-117; and see, Spolter v. Four-Wheel Brake Service Co., supra, 99 Cal.App.2d 690, 693-694; Vaccarezza v. Sanguinetti, supra, 71 Cal.App.2d 687, 691; Katenkamp v. Union Realty Co., supra, 36 Cal.App.2d 602, 617; and Lejeune v. General Petroleum Corp., supra, 128 Cal.App. 404, 415-416.) The question, therefore, is not whether the trial court could reasonably have inferred that Mrs. Rowley survived, or that the deaths were simultaneous, or that the evidence was insufficient to establish that the victims died other than simultaneously, but attention must be focused on the evidence which supports the conclusion that Miss Cooper survived in order to determine its quality and weight.
 Respondent's claim in essence, as predicated upon the physical facts and the testimony of the coroner and her expert witness, is that the direction of force was from right to left and of necessity must have affected Mrs. Rowley first. She postulates that Miss Cooper's head smashed into the doorpost as a result of the continuation in space and time of the force which had compressed Mrs. Rowley between the door and the dashboard. Appellants point out that this conclusion assumes that neither of the victims had been dislodged from the position in which she had been riding nor injured as a result of the unorthodox movement of the car prior to the collision, that no force other than a direct one was set up by the collision, that Miss Cooper's head was not in the path of the arc of the inwardly swinging door, or any other object dislodged by the collision, nor bumped against some other fixed part of the car, and that no interval of time passed between the time the right-to-left force commenced the compression of Mrs. Rowley, and her ultimate injury and death.
 In Estate of Wallace, as in this case, all of the victims of the accident were found lifeless. The medical evidence showed that mother and daughter, whose estates were involved, each received injuries which would cause instantaneous death. The court rejected the contention that because the daughter was seated on the side of the automobile nearest the locomotive which hit it, she must have been struck before her mother was. (64 Cal.App. at p. 113.) The court observed, "The fact is that the death-dealing impacts occurring between some part or parts of the engine or of the broken automobile and the persons of these unfortunates were so nearly synchronous, in an absolute sense, that for all practical purposes it is impossible *338 to regard them as discrete events separated in time. But if they could be visualized as separate happenings--if those blows which caused instant death may be regarded as occurring successively--then we say that there is no way by which it can be judicially determined that one preceded the other." (Id., p. 114.)
 The opinion further states: "Regardless of how the mother and daughter were seated in the automobile there would at most be but three or four feet between them; while the train, traveling at a speed of fifty miles per hour, was moving at the rate of more than seventy-three feet a second. Rushing upon the automobile and its luckless occupants at this terrific speed, the huge engine, with the combined weight of the cars behind it, snuffed out the lives of mother and daughter. In an instant, in the twinkling of an eye, all was over. Under such circumstances it were useless to speculate upon the problem of survivorship. In a second the scene passed beyond the vision of human penetration. What was said in Newell v. Nichols, 75 N.Y. 89 [31 Am.Rep. 424], is pertinent here: 'It is as unbecoming as it is idle for judicial tribunals to speculate or guess whether ... one or the other may not have ceased to gasp first.' " (Id., p. 115.) Although the Supreme Court disapproved the opinion in part, it upheld the decision insofar as it determined "that the question as to whether the mother or daughter died first is not ascertainable from the evidence and that the finding of the trial court that the daughter died first is not sustained by the evidence." (Id., pp. 116-117.) Appellants insist that, as in Wallace, the order and decree which is predicated upon a finding of survivorship should be reversed.
 Two factors distinguish this case from Wallace. In Wallace the relative position of the victims at the time of impact, and the movement of their bodies at and after impact could not be ascertained. The daughter was last observed rising up from her seat in the left rear of the automobile. Her dismembered body was scattered along the tracks for quite a distance. There was no evidence to show where the mother was seated. Her body, in addition to the bodies of the other victims, was outside the car. The wreckage of the car had been carried 600 feet on a cowcatcher. The mother's body was the third body west of the crossing. Some of her daughter's remains were nearer to and some farther from the crossing. Moreover, no evidence was offered in Wallace to show in what manner the fatal injuries were inflicted.
 [7a] Appellants insist that the doctors' testimony as to *339 the manner in which the injuries were received should be rejected as not within medical expertise. In re Cruson, supra, holds that it was error to permit a lay mortician, coroner, to testify as to his opinion as to which, of two victims, survived. The opinion points out that the witness had no greater skill than the trier of fact in drawing inferences from the data in question, and that the witness' opinion was based on data which was incomplete because he did not know the cause of death of either victim. (189 Ore. at pp. 552-553 [20 A.L.R.2d at pp. 228-229]; and see Estate of Loucks, supra, 160 Cal. 551, 558.)
 In the instant case, objection was promptly made to the coroner's expression of any opinion on survivorship which was predicated upon the physical facts occurring at the time of the accident. The objection was based on the failure to qualify the coroner as an expert in the law of physics or dynamics and transference of pressure and force. As a result, the coroner, when originally on the witness stand, testified only to a medical possibility that Mrs. Rowley expired first because of the severity of her injuries, and this opinion was qualified by his first letter in which he stated that death to both was absolutely instantaneous. When the coroner was recalled as a witness, and he was permitted to testify in regard to the letter to respondent's attorney, appellants again objected on the ground that his conclusion as to survivorship was based on other than medical facts. The witness then testified without objection that, "Mrs. Rowley was struck first manifestly, because the right side of the car was struck first. ..." An objection to the introduction of the second letter was then overruled because the witness had testified to its substance. The witness was then permitted to testify without objection concerning the 1/150,000 second. On cross-examination appellants brought out the doctor's experience with physics.
 Objections were interposed to hypothetical questions asked of respondent's expert medical witness on the ground of lack of qualifications and of the form of the question. The original objection was sustained, but over objection he was allowed to testify that Mrs. Rowley was dead when the door had completed crushing her against the dashboard, and that Miss Cooper died immediately from the force that struck her entire right side. No further objections were interposed to this witness' testimony, and the matters quoted in the statement of facts concerning survivorship were then elicited. Appellants *340 again established the nature of the witness' knowledge of physical principles.
 [8] The problem is phrased in Burch v. Valley Motor Lines, Inc. (1947) 78 Cal.App.2d 834 [179 P.2d 47], as follows: "The general rule is 'that witnesses must testify to facts, and not to opinions, and that whenever the question to be determined is the result of the common experience of all men of ordinary education, or is to be inferred from particular facts, the inference is to be drawn by the jury, and not by the witness.' (Sappenfield v. Main St. etc. R.R. Co., 91 Cal. 48, 59 [27 P. 590])."
 "The question presented for decision is whether the proffered testimony was within that rule or whether it was within the purview of section 1870, subdivision 9, Code of Civil Procedure which provides that the opinion of a witness is admissible 'on a question of science, art, or trade, when he is skilled therein,' because it deals with 'matters not presumably within the common knowledge of men' (Callan v. Bull, 113 Cal. 593, 607 [45 P. 1017]), and 'was proper and necessary to an enlightened consideration and a correct disposition of the ultimate issue' (Fonts v. Southern Pac. Co., 30 Cal.App. 633, 641 [159 P. 215])." (78 Cal.App.2d at p. 839.) [9] That case contains an extensive review of cases on the use of expert testimony and pertinently notes: "The authorities hold that an expert medical witness may give his opinion as to the means used to inflict a particular injury, his reasoning being from effect to cause, the deduction being based on the condition and appearance of the wound itself (People v. Sampo, 17 Cal.App. 135 [118 P. 957]; Dow v. City of Oroville, 22 Cal.App. 215 [134 P. 197]; Perkins v. Sunset Tel. & Tel. Co., 155 Cal. 712 [103 P. 190]). ... In the Berkovitz case [Berkovitz v. American River Gravel Co. (1923) 191 Cal. 195 (215 P. 675)] it was held that the court erroneously sustained an objection to expert testimony as to whether the damage to the truck as shown by the evidence in that case 'could have been caused by the Dodge car traveling at a speed of twenty miles an hour.' In so holding the court apparently drew an analogy from the three cases just named involving medical testimony, which cases it cites."
 "It is difficult to find any distinction between the testimony of a surgeon with an X-ray picture before him, pointing out to a jury a fracture and explaining the direction from which the force came which caused it, and the proffered evidence in this case, where the drawbar itself was before the jury and *341 the witness was prepared to explain (so the tender showed) the kind of force or blow by which it was fractured, and to testify, also, as to what his laboratory examination of the drawbar disclosed and the conclusions he drew from such examination." (Id., pp. 842-843.) On the other hand, this court has noted "that the general tenor of the precedents in this state indicates a disapproval of expert testimony designed to reconstruct what occurred in a traffic accident." (Francis v. Suave (1963) 222 Cal.App.2d 102, 115, and see pp. 113- 115 [34 Cal.Rptr. 754]; but cf. Hughes v. Kilgore (1965) 233 Cal.App.2d 541, 543 [43 Cal.Rptr. 820].)
 [7b] This case involves a mixed question of medical science and the rules governing the application of physical force. The question of the coroner's qualification to express his opinions was one to be determined by the trial court. The other expert's testimony was based on the physical findings as to the right side of Miss Cooper's body. His testimony was medical in nature, and received without objection. It serves to support the order. [10] " 'Medical witnesses need not testify positively to support a finding of proximate cause. Their opinion of the probabilities is sufficient for that purpose. (Travelers Ins. Co. v. Industrial Acc. Com., 33 Cal.2d 685 [203 P.2d 747]; cf. Ostertag v. Bethlehem etc. Corp., 65 Cal.App.2d 795, 806-807 [151 P.2d 647].)' (Robison v. Leigh (1957) 153 Cal.App.2d 730, 732 [315 P.2d 42]; see also Francis v. Sauve (1963) 222 Cal.App.2d 102, 117-118 [34 Cal.Rptr. 754].)" (Tannyhill v. Pacific Motor Trans. Co. (1964) 227 Cal.App.2d 512, 521 [38 Cal.Rptr. 774].)
 [11] "It is within the exclusive province of the trier of fact to determine the credibility of experts and the weight to be given to their testimony. ... Where there is conflicting expert evidence, the determination of the trier of fact as to its weight and value and the resolution of such conflict are not subject to review on appeal." (Francis v. Sauve, supra, 222 Cal.App.2d 102, 119.)
 Whether or not the members of this court would have arrived at the same conclusion is not decisive. The following remarks are pertinent: "It might be said that if this court were the fact finder now and we had to do it on the printed record alone, we would probably come up with the conclusion that the testimony in printed form gives no abiding conviction as to which died first. But the district judge saw and heard four live witnesses. Into their stories he integrated four depositions. His conclusion is plausible that Junior Hahn died *342 last, just as a finding that Doctor Hahn died last or a finding that there is not sufficient evidence to tell who died first (therefore, simultaneous death) could be." (Hahn v. Padre, supra, 235 F.2d 356, 359.)
 The appeal from the memorandum decision is dismissed. The order is affirmed.
 Molinari, P. J., and Elkington, J., concurred.
NOTES
[fn. 1] 1. Probate Code, section 1240 does not specifically designate an order made in proceedings instituted, heard and determined under the provisions of sections 296.41 and 296.42, as an appealable order. It does, however, authorize appeals from an order "instructing or directing an executor or administrator" and from an order "determining heirship or the persons to whom distribution should be made." The order appealed from is embraced in these provisions. (See Estate of Neilson (1960) 181 Cal.App.2d 769, 771-772 [5 Cal.Rptr. 542, 90 A.L.R.2d 477]; and Estate of Putnam (1959) 175 Cal.App.2d 781, 783-784 [346 P.2d 841].) However, appellants' purported appeal from the decision of the court must be dismissed. (Estate of Pieper (1964) 224 Cal.App.2d 670, 675 [37 Cal.Rptr. 46].)
[fn. 2] 2. The significance of this observation may be questioned. Compare Eramdjian v. Interstate Bakery Corp. (1957) 153 Cal.App.2d 590, 601 [315 P.2d 19] where the evidence revealed, "Because of the delicate nature of the instrument and the great shock to it, the needle could stop at any point."
[fn. 3] 3. This doctor also testified that he had treated Miss Cooper for symptoms indicating possible heart or circulatory impairment. Other evidence was introduced to suggest that Miss Cooper had a heart attack which caused her death and loss of control of the car before the collision. This thesis was clearly rejected by the trial court and it is not necessary to determine whether the evidence would have supported such a finding.
[fn. 4] 4. In Texas the uniform act was modified to apply in situations where "there is no direct evidence" that persons have died other than simultaneously and a higher degree of proof is required. (Glover v. Davis (Tex. 1963) 366 S.W.2d 227.